1   CHARLENE M. MORROW (CSB NO. 136411)
    cmorrow@fenwick.com
2   VIRGINIA K. DEMARCHI (CSB NO. 168633)
    vdemarchi@fenwick.com
3   RACHAEL G. SAMBERG (CSB NO. 223694)
    rsamberg@fenwick.com
4   KIMBERLY I. CULP (CSB NO. 238839)
    kculp@fenwick.com
5   SALAM RAFEEDIE (CSB NO. 250191)
    srafeedie@fenwick.com
6   FENWICK & WEST LLP
    Silicon Valley Center
7   801 California Street
    Mountain View, CA  94041
8   Telephone:  (650) 988-8500
    Facsimile:   (650) 938-5200
9
    Attorneys for Plaintiff
10  JOBY, INC.

11

12              UNITED STATES DISTRICT COURT

13           NORTHERN DISTRICT OF CALIFORNIA

14               SAN FRANCISCO DIVISION

15

16  JOBY, INC.,                        Case No. 3:07-CV-06455 (SI)

17              Plaintiff,             **PLAINTIFF JOBY, INC.'S NOTICE OF
                                       MOTION AND MOTION FOR A
18  v.                                 PRELIMINARY INJUNCTION**

19  TOCAD AMERICA, INC.,               **Date:        May 2, 2008**
                                       **Time:        2:00 p.m.**
20              Defendant.             **Courtroom: 10, 19th Floor**
                                                   **The Honorable Susan Illston**
21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 2

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 4

STATEMENT OF ISSUES ................................................................................................... 4

STATEMENT OF FACTS .................................................................................................... 4

I.      JOBY'S GORILLAPOD ........................................................................................... 4

II.     THE GORILLAPOD'S SUCCESS ........................................................................... 6

III.    TOCAD'S KNOCK-OFF OF THE GORILLAPOD ................................................ 8

IV.     DAMAGE TO JOBY AS A RESULT OF TOCAD'S KNOCK-OFF ..................... 10

ARGUMENT ....................................................................................................................... 13

I.      STANDARD FOR PRELIMINARY INJUNCTION ............................................. 13

II.     JOBY IS LIKELY TO SUCCEED ON ITS TRADE DRESS CLAIM ................. 14

        A.      Joby's Gorillapod Trade Dress Is Non-functional ................................... 14

        B.      The Gorillapod Trade Dress Identifies Joby as Its Source ..................... 16

        C.      The Likelihood of Confusion Is Substantial ............................................ 18

                1.      Tocad's Knock-offs Are Nearly Identical to the Gorillapod ........ 18

                2.      The Gorillapod Trade Dress Is Strong ......................................... 19

                3.      The Gorillapod, FlexPod and FlexPod Plus Compete Directly ... 20

                4.      Joby and Tocad Use the Same Marketing Channels ................... 20

                5.      Consumers Are Unlikely to Discern Differences Between Joby's
                        Gorillapod and Tocad's FlexPod Products ................................... 21

                6.      Tocad Intentionally Copied the Gorillapod Trade Dress ............ 21

                7.      Consumers Have Actually Been Confused by Tocad's Knock-offs ........ 22

        D.      Joby Will Suffer Irreparable Harm If This Motion Is Denied ................ 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

**TABLE OF CONTENTS**
**(continued)**

2
                                                                                    **Page**

3        E.      The Balance of Hardships Favors Granting this Motion ....................................23

4   CONCLUSION.................................................................................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*AMF Inc. v. Sleekcraft Boats,*
5
  599 F.2d 341 (9th Cir. 1979) ............................................................................. *passim*

6
*Big Country Foods, Inc. v. Bd. of Educ. of Anchorage School Dist.,*
  868 F.2d 1085 (9th Cir. 1989) ...................................................................................... 13

7
*Brookfield Commc'n's, Inc. v. West Coast Entm't Corp.,*
8
  174 F.3d 1036 (9th Cir. 1999) ................................................................................. 19, 21

9
*Carol Cable Co., Inc. v. Grand Auto, Inc.,*
  4 USPQ. 2d 1056 (N.D. Cal. 1987) ............................................................................... 23

10
*Clicks Billiards, Inc. v. Sixshooters Inc.,*
11
  251 F.3d 1252 (9th Cir. 2001) ................................................................... 14, 16, 18, 21

12
*Disc Golf Ass'n v. Champion Discs, Inc.,*
  158 F.3d 1002 (9th Cir. 1998) ...................................................................................... 14

13
*Dreamworks Prod. Group, Inc. v. SKG Studio,*
14
  142 F.3d 1127 (9th Cir. 1998) ...................................................................................... 18

15
*Faberge, Inc. v. Saxony Prod's, Inc.,*
  605 F.2d 426 (9th Cir. 1979) ........................................................................................ 17

16
*Freecycle Network, Inc. v. Oey,*
17
  505 F.3d 898 (9th Cir. 2007) ........................................................................................ 13

18
*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,*
  826 F.2d 837 (9th Cir. 1987) ........................................................................................ 17

19
*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,*
20
  111 F.3d 993 (2d Cir. 1997) .......................................................................................... 19

21
*GoTo.com, Inc. v. Walt Disney Co.,*
  202 F.3d 1199 (9th Cir. 2000) ..................................................................... 13, 18, 20, 22

22
*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,*
23
  4 F.3d 819 (8th Cir. 1993) ............................................................................................ 23

24
*Nat'l Van Lines v. Dean,*
  237 F.2d 688 (9th Cir. 1956) ........................................................................................ 22

25
*Ocean Garden, Inc. v. Marktrade Co., Inc.,*
26
  953 F.2d 5008 (9th Cir. 1991) ...................................................................................... 24

27
*Qualitex Co. v. Jacobson Prods. Co., Inc.,*
  514 U.S. 159 (1995) ...................................................................................................... 14

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rain Bird Corp. v. Hit Prod's Corp.*,
  2004 U.S. Dist. LEXIS 20790 (C.D. Cal., June 21, 2004) ...................................24

*Sharper Image Corp. v. Target Corp.*,
  425 F. Supp. 2d 1056 (N.D. Cal. 2006)...........................................................17

*Sony Computer Entm't America, Inc. v. Gamemasters*,
  87 F. Supp. 2d 976 (N.D. Cal. 1999)...............................................................22

*St. Ives Lab's., Inc. v. Nature's Own Lab's.*,
  529 F. Supp. 347 (C.D. Cal. 1981)...........................................................17, 22

*STX, Inc. v. Trik Stik, Inc.*,
  708 F. Supp. 1551 (N.D. Cal. 1988) .....................................................15, 22, 23

*Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*,
  2005 U.S. Dist. LEXIS 4581 (N.D. Cal. Mar. 23, 2005) .............................19, 23

*Vision Sports, Inc. v. Melville Corp.*,
  888 F.2d 609 (9th Cir. 1989) ...........................................................................14

*Wal-Mart Stores Inc. v. Samara Bros., Inc.*,
  529 U.S. 205 (2000) ......................................................................................16

*White Swan, Ltd. v. Clyde Robin Seed Co., Inc.*,
  729 F. Supp. 1257 (N.D. Cal. 1989) ................................................................18

**STATUTES**

15 U.S.C. § 1125(a) .............................................................................................14

Civil Local Rule 7-1(a) .........................................................................................1

Federal Rule of Civil Procedure 65.....................................................................1, 13

Lanham Act Section 43(a)......................................................................................14

**OTHER AUTHORITIES**

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
  §§ 2:4, 15:37, 4th Ed. (2007) .....................................................................14, 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that on May 2, 2008 at 2:00 p.m., or as soon thereafter as the matter may be heard, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California in the courtroom of the Honorable Susan Illston, plaintiff Joby, Inc. ("Joby") will and hereby does move for a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP") and Civil Local Rule 7-1(a), to enjoin defendant Tocad America, Inc. ("Tocad") from infringing Joby's trade dress. Joby's motion is based on this notice and motion, the accompanying Memorandum of Points and Authorities, the declarations of Mr. Bevirt, Mr. Minn, Ms. Burns, Mr. Melamed, Mr. Waddell, and Ms. DeMarchi and upon such other matters as may be presented to the Court in connection with the hearing.

Fenwick & West LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

# INTRODUCTION

Some consumer products have, by virtue of their design, immediate consumer appeal. A consumer wants to pick the product up, carry it around, take pictures of it, and write paeans to it on their blogs. The media, falling for it as well, can give the product immediate national and international recognition. The Joby Gorillapod flexible tripod is one such product:



What lends the Gorillapod its appeal? Like other consumer products that, when introduced, create a new product class of their own, the Joby Gorillapod combines first rate mechanical engineering design with first rate industrial design. Something about the combination of the round ball body and leg segments, rounded head, round feet, bi-color striping and proportions add up to more than the sum of their parts, and give this product an endearing and playful feel.

That consumers and the media have recognized this quality is clear. The charming Gorillapod has been featured on *Good Morning America* and *The Rachael Ray Show,* and been the subject of over 30 articles, which have appeared in a wide range of media outlets, including CNET, the New York Times, National Geographic, Popular Photography, and Wired. In addition, the Gorillapod has been widely discussed on blogs, and has its own fan site: "Gorillapod Love" on the online photo-sharing site, flickr.com. (Declaration of Melissa Burns ("Burns Decl.") Ex. F"; *see* http://flickr.com/groups/gorillapod/pool.)

Since its introduction in 2006, the Gorillapod has been an immediate success for Joby. Thus far, Joby has sold over a million Gorillapods. The Gorillapod's unique design, and customer recognition of Joby as the source of that unique design has earned Joby a reputation as a go-to company for fun, high-quality products.

1    The downside to Joby's success with the Gorillapod is that it has attracted imitators –

2    companies, who rather than investing in their own unique look, have simply chosen to steal

3    Joby's product look and trade off of Joby's reputation.  Chief among those imitators is the

4    defendant, Tocad America, Inc.

 

10   The Tocad products (shown in the image above) look so much like the Joby products that both

11   merchants and consumers have been confused as to their source.  The Tocad products are of

12   inferior quality.  Both Tocad products use cheaper materials that are prone to breakage, with the

13   rubber rings cracking or falling off and in some instances the legs breaking off.  In addition, the

14   FlexPod Plus (shown on the right above), while it still looks almost identical to a Joby product,

15   uses an inferior mechanical design that results in poorer product performance.

16   Tocad did not copy Joby's products until almost a year after Joby introduced the

17   Gorillapod, after Tocad saw the considerable buzz the product was generating.  Joby first

18   corresponded with Tocad about the patent and trade dress issues associated with the first Tocad

19   knock off, the FlexPod.  After learning that Tocad was going to be redesigning the FlexPod, Joby

20   deferred litigation until it saw whether the redesign would address Joby's concerns.  After seeing

21   that the redesign was mechanically different, thus avoiding some of the patent issues, but still

22   used the same trade dress as the Gorillapod, Joby corresponded further with Tocad.  When that

23   correspondence brought no further action, Joby filed this lawsuit.  After suit was brought, Tocad

24   offered to engage in settlement discussions; after a series of communications regarding the need

25   for further redesign of the Tocad product, settlement discussions broke down

26   With no further prospect of an acceptable redesign by Tocad, Joby seeks a preliminary

27   injunction against further trade dress infringement by Tocad.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**MEMORANDUM OF POINTS AND AUTHORITIES**

Joby respectfully submits the following memorandum in support of its Motion for a Preliminary Injunction.

**STATEMENT OF ISSUES**

Whether Joby is entitled to a preliminary injunction against Tocad's continued manufacture, sale and promotion of the FlexPod and FlexPod Plus tripods, because Joby is likely to succeed on the merits of its trade dress infringement claim, irreparable harm is presumed, and Joby has in fact shown the likelihood of irreparable injury.

**STATEMENT OF FACTS**

**I.    JOBY'S GORILLAPOD**

Joby, Inc. was launched in 2005 with a single product – a flexible camera tripod called the Gorillapod.  (Declaration of JoeBen Bevirt ("Bevirt Decl.") ¶ 2.)  The company is headquartered in San Francisco and employs 44 people worldwide.  (Bevirt Decl. ¶ 3.)  The original Joby Gorillapod was designed to support a compact digital camera.  The tripod's flexible legs allow it to hang from a tree branch, wrap around a pole, or balance on jagged rock:



JoeBen Bevirt, Joby's founder and president, first conceived of the idea for what ultimately became the Gorillapod while he was a graduate student in mechanical engineering at Stanford University.  (Bevirt Decl. ¶ 2.)  The flexible mechanical design ultimately chosen by Joby enables the tripod to secure itself to virtually any surface anywhere.  In addition to investing in the mechanical design of the product, Joby paid close attention to the consumer appeal of the product. Joby wanted the tripod's look (and name) to suggest nimble, creature-like qualities and adopted the "creature" theme for the product's trade dress and trade name.  (Bevirt Decl. ¶ 4.)

Fenwick & West LLP
Attorneys At Law
Mountain View

The Gorillapod has a body section and three legs made of rounded segments (or "balls") connected together.  Each of the segments in the legs has a ring around the middle in a color that contrasts with the color of the segment, and each segment ends in a rounded "foot."  The rounded body, the rounded leg segments, the rounded feet, the proportions that Joby selected for the body, legs and feet, and the contrasting rings give the tripod a playful, striped look.  (Bevirt Decl. ¶ 4, Exs. A, D, E, & F; *see also* animation on home page of Joby's website www.joby.com.**)**

An early prototype of the original-size Gorillapod was shown at the Consumer Electronics Show held in Las Vegas in January 2006.  (Bevirt Decl. ¶ 5.)  At that time, there was one other flexible tripod on the market, which looked something like the tripod shown at left below, but professional and amateur photographers alike relied primarily on conventional, rigid-leg tripods, such as the tripod shown at right below.  (Bevirt Decl. ¶ 5.)




None of the available tripods looked anything like the Gorillapod.  (Bevirt Decl. ¶ 5.)

Joby began offering the original Gorillapod for sale in February 2006.  The product was an immediate success.  (Bevirt Decl. ¶ 8.)  During the first nine months following its debut, Joby sold approximately 160,000 Gorillapods and received rave reviews from, among others, CNET, Popular Photography, Shutterbug, Wired Magazine and Gizmodo.com.  The tripod was also featured on the television program Good Morning America.  (Bevirt Decl. ¶ 10.)

In August 2006, Joby began offering a larger tripod, the Gorillapod SLR, which is capable of supporting video cameras and SLR cameras weighing up to 1.75 lbs.  In October 2006, Joby added the Gorillapod SLR-Zoom, which can support professional SLR cameras with zoom lenses weighing up to 6.6 lbs.[1]  (Bevirt Decl. ¶ 6.)  Currently, the Gorillapod is sold in three different

---

[1]    The original Gorillapod and Gorillapod SLR can also be used with various camera accessories (such as a flash) and with handheld devices (such as cell phones and PDAs). (Bevirt Decl. ¶ 6.)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

sizes and six different color combinations, all with the same unique look:



(Bevirt Decl. ¶ 6.)  The name "JOBY" appears on the face of the round quick release button on the top portion of each Gorillapod.  (Bevirt Decl. ¶ 6.)

Joby's Gorillapods are made using high-quality plastic and rubber.  They are molded using custom tooling and a double-injection process that minimizes the "flash" (*i.e.* excess material that protrudes between the two surfaces of the mold) on the finished product and produces a secure bond between the plastic and rubber.  (Bevirt Decl. ¶ 7.)  Joby invested a significant amount of time and effort identifying a factory that could meet its quality specifications.  (Bevirt Decl. ¶ 7.)

## II.    THE GORILLAPOD'S SUCCESS

Since its launch in February 2006, Joby has sold more than one million Gorillapods.  (Bevirt Decl. ¶ 8.)  The product is sold through Joby's own online store (www.joby.com), through well-known camera equipment retailers, such as Adorama and B&H Photo-Video, and through other well-known retailers, such as Best Buy, Amazon.com, Eddie Bauer, Red Envelope and REI.  The Gorillapod is also sold through camera and outdoor equipment distributors worldwide.  (Bevirt Decl. ¶ 8.)  Joby uses clear plastic in its packaging, so that whether the product is sold on the Internet or in a retail outlet, the Gorillapod is completely visible to the purchaser.  (Bevirt Decl. ¶ 8.)

Joby has also invested heavily in advertising and promotion of the Gorillapod.  Since February 2006, Joby has shown the Gorillapod at seventeen trade shows and spent over $1 million on advertising and promotion of the Gorillapod.  (Bevirt Decl. ¶ 9.)  In addition, its

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

distributors and retailers, with financial incentives provided by Joby, have spent an estimated $500,000 to advertise and promote the Gorillapod.  This advertising and promotion always includes images of the Gorillapod and typically emphasizes the product's fun, animal-like qualities.  (Bevirt Decl. ¶ 9.)

The Gorillapod has received enthusiastic reviews and extensive press coverage during the past two years.  Since its launch in early 2006, the Gorillapod has been featured in over 30 reviews and articles in a wide range of media geared to photography buffs, such as Popular Photography, Shutterbug, Outdoor Photographer and Amateur Photographer.  For example, one review by Popular Photography in May 2006 commented:

> Joby's new Gorillapod wins, hands-down, for Most Convenient Device It Took Too Long To Invent.  With ball-and-socket type joints that bend and rotate 360 degrees, the Gorilla can cling to myriad objects to form a stable anchor for compact cameras . . .

The review included a picture of the Gorillapod wrapped around a post.  (Bevirt Decl. Ex. G.)

Another, extensive review by Calumet Photographic in July 2007 commented:

> Gorillapods manufacturer, Joby, has made quite a stir with their unique, flexible, grab-onto-anything tripods and have even grabbed a 2007 Innovative Digital Product award by Digital Imaging Marketing Association.  Not only is Joby coming up with innovative products, they're also a proponent for a greener tomorrow.  One percent of their sales are donated to the preservation of the planet, and they also give you the option to purchase their product with or without packaging (from their website).

The review included a detailed discussion of each version of the Gorillapod and included fifteen photographs of the Gorillapods in action, concluding with a very favorable recommendation:

> Not once did I fear that my cameras would fall off any of the Gorillapods, nor did I fear the Gorillapod itself would let go of my chosen object.  Without that possibility, the only possibilities you're left with are the million and one ways to attach them to whatever challenges your fancy.  Gorillapods would be excellent for traveling, especially if you'll be in an unpredictable environment.

(Bevirt Decl. Ex. G.)

The Gorillapod has also been the subject of articles in publications and other media geared to the general public, such as CNET, Gizmodo.com, Wired Magazine, National Geographic and The New York Times, and popular television programs, such as Good Morning America and The Rachel Ray Show.  (Bevirt Decl. ¶ 10.)

Fenwick & West LLP
Attorneys At Law
Mountain View

1   Because of the Gorillapod, Joby has earned a reputation for producing fun, innovative and

2   high-quality products, based primarily on Joby's offering of the Gorillapod.  (Burns Decl. ¶ 3.)

3   Joby also has a reputation for excellent customer service.  (Burns Decl. ¶ 4.)  The user appeal of

4   the tripod, combined with Joby's promotional efforts and the attention the product has gotten

5   from camera buffs and the popular media have contributed to the Gorillapod's success and

6   popularity.  The product even has a fan site:  "Gorillapod Love" on the online photo-sharing site,

7   flickr.com.  (Burns Decl. Ex. F.; *see* http://flickr.com/groups/gorillapod/pool.**)**

8   **III.    TOCAD'S KNOCK-OFF  OF THE GORILLAPOD**

9   Tocad is headquartered in New Jersey and has been in business for over 20 years.

10  (Declaration of Virginia K. DeMarchi ("DeMarchi Decl.") Ex. A.)  It distributes a wide range of

11  camera equipment and accessories under various brand names to an estimated 1,700 retail outlets

12  in the United States and internationally.  (DeMarchi Decl. Exs. B and C.)

13  In mid-October 2006, after the Gorillapod had been on the

14  market for almost a year, Joby learned that Tocad had plans to begin

15  selling a flexible tripod called the "FlexPod" under the brand name

16  Sunpak.  (Minn Decl. ¶ 3.)  Tocad did not post any images or other

17  information about the tripod on its web site at that time, and Joby

18  did not see the Tocad product until the Photo Plus Expo show in

19  November 2006.  (Minn Decl. ¶ 4.)  The Tocad FlexPod, shown in the



20  image to the right, looks just like Joby's Gorillapod – its legs have rounded segments (exactly the

21  same number as Joby's), each segment has a ring around the middle in a contrasting color, and

22  each leg ends in a rounded foot.  (Minn Decl. ¶ 4.)

23  Shortly after the Tocad products became available, Joby's counsel began corresponding

24  with Tocad's counsel about Tocad's knock-off.  At that time Joby believed that Tocad was not

25  only copying Joby's product but was using images of a Gorillapod to advertise its FlexPod.  (*See*

26  (DeMarchi Decl. Ex. H.))  Tocad denied that it provided any such images or that it controlled the

27  advertising by its retailers.  (DeMarchi Decl. Ex. L.)  While Tocad and Joby were communicating

28  about the FlexPod, Joby learned that Tocad planned to redesign its product.  Rather than moving

FENWICK & WEST LLP
ATTORNEYS  AT LAW
MOUNTAIN  VIEW

1  forward with a lawsuit against Tocad at that point, Joby chose to see if the redesign would

2  address its concerns.  (Bevirt Decl. ¶ 13.)

3          In October 2007, Joby discovered that Tocad was offering a new version of its flexible

4  tripod, called the "FlexPod Plus."  (Minn Decl. ¶ 6.)  Instead of jointed legs – like the Joby

5  Gorillapod and the earlier FlexPod – the FlexPod Plus has an aluminum wire core in each leg.

6  However, despite the fact that the Plus version of Tocad's product uses a different mechanical

7  design (apparently in an effort to avoid patent problems), Tocad continues to use an exterior

8  covering for the legs of the tripod that looks like the earlier FlexPod version of its product – and

9  continues to look like Joby's Gorillapod:

10

11

12

13

14

15

16

17

18

     

**FlexPod Plus**          **FlexPod Plus**
                          **(cut away view)**

19  (Minn Decl. Exs. B and D.)

20          Joby promptly objected to the new FlexPod Plus tripod.  (DeMarchi Decl. Ex. M.)  Joby

21  engaged in concerted efforts to negotiate a resolution with Tocad but its efforts were met by

22  increasingly hostile correspondence from Tocad's counsel.  (DeMarchi Decl. ¶ 14.)  Joby filed its

23  complaint on December 21, 2007, and served a courtesy copy of it on Tocad's counsel the same

24  day.  (DeMarchi Decl. Ex. M.)  At Tocad's request, the parties met in February 2008 to discuss a

25  possible resolution of this dispute and exchanged additional correspondence through mid-March

26  in an effort to resolve the matter without litigation.  (DeMarchi Decl. ¶ 14.)  These efforts were

27  unsuccessful and all negotiations ended on March 14, 2008.

28          Currently, Tocad is selling and distributing both the original FlexPod and the newer

FENWICK & WEST LLP
ATTORNEYS  AT LAW
MOUNTAIN  VIEW

1   FlexPod Plus tripods to retailers in the United States and internationally.  Tocad offers three sizes

2   of each in three colors of plastic (black, blue or gray) with contrasting colored rings and feet (with

3   the exception of the FlexPod Pro Plus, which appears to be available only in the all black or all

4   gun metal).[2]  (Minn Decl. Ex. F.)  Tocad does not place its logo, the product name, or the Sunpak

5   brand name on either the FlexPod or the FlexPod Plus.  (Minn Decl. ¶ 6.)

6           Tocad displays its FlexPod and FlexPod Plus tripods at many of the same trade shows

7   Joby also attends, including the Consumer Electronics Show, the Photo Marketing Association

8   show, and the Photo Plus Expo.  (Minn Decl. ¶ 7.)  Tocad also sells its tripods to many of the

9   same retailers Joby has including Amazon.com, Best Buy, Adorama, B&H Photo-Video, Digital

10  Foto Club, Ace Photo & Digital, Focus Camera, Tristate Camera Video and Computers, and PRO

11  group.  (Minn Decl. ¶ 8.)  Like Joby's Gorillapod, when sold online the FlexPod and FlexPod

12  Plus are usually displayed without packaging.  (Minn Decl. ¶ 11.)  When sold in a store, the

13  Tocad tripods are packaged in clear plastic that allows the purchaser a full view of the product.

14  (Minn Decl. ¶ 11.)  Tocad's tripods are priced at approximately 20-40% less than Joby's tripods.

15  **IV.    DAMAGE TO JOBY AS A RESULT OF TOCAD'S KNOCK-OFF**

16          The damage to Joby as a result of Tocad's knock-off goes beyond simply lost sales.

17  Before Tocad entered the market, Joby was known as the first mover who created a product class

18  of its own with its charming flexible tripod design.  (Bevirt Decl. ¶ 5.)  Now, there is extensive

19  confusion at both the retail and consumer level that is damaging Joby's reputation.  Joby has

20  documented several instances of actual confusion in the market since Tocad's introduction of the

21  FlexPod and FlexPod Plus.  This confusion is particularly harmful to Joby because its product is

22  being confused with the lower-quality Tocad products, which have documented failure issues.

23          In fact, one of the first times that Joby saw a Tocad product in the marketplace, the Tocad

24  product had broken before it was ever removed from the packaging:

25

26

27  _____

28  [2]    Tocad also offers a "monopod" with the same rounded segments and contrasting rings.
        (Minn Decl. Ex. F.)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW



The FlexPod and FlexPod Plus look just like the Gorillapod, but they are inferior products.  While the FlexPod has a ball-and-socket construction, it uses a low quality, cheaper plastic than what Joby uses for the Gorillapod.  (Bevirt Decl. ¶ 12.)  The molding of the FlexPod is sloppy, which produces excessive flash and causes the rubber to not bond well to the plastic, which in turn tends to cause the rubber rings to fall off.  (Bevirt Decl. ¶ 12.)  The FlexPod Plus is made with an aluminum wire core in the product's legs.  (Bevirt Decl. ¶ 14.)  The wire core is easily broken by bending the leg back and forth several times, and the joints where the legs connect to body are also susceptible to breaking.  (Bevirt Decl. ¶ 14.)

Customers purchasing the lower quality Tocad products have thought they were purchasing Joby products, and even tried to return them to Joby!  For example, in the spring of 2007, a customer called Joby complaining that his Gorillapod was defective and would not support the weight of his camera.  Joby authorized a return so that the product could be exchanged.  However, when the product arrived, Joby discovered that it was a FlexPod, not a Gorillapod.  The customer was apparently surprised to learn that his product was not made by Joby.  (Declaration of Alex Waddell ("Waddell Decl.") ¶ 5.)  Again, in late March 2008, another customer contacted Joby complaining that the leg on his SLR "Gorillapod" had broken off.  This customer actually owned an original-size, authentic Gorillapod and believed that the SLR-sized tripod he had received as a gift was also made by Joby.  In fact, the broken SLR-sized tripod was made by Tocad.  (Burns Decl. ¶ 9, Ex. E.)

Joby has received a number of other inquiries from customers reflecting confusion about

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

whether Tocad's product comes from, or is authorized by Joby, including the following

communications sent to Joby's info@joby.com address:

> Fathers day is soon upon us and I'm debating which tripod to give my Dad and wondered if you could shed some light upon the benefits of the Gorillapod vs. the Flexpod. Are they the same? Did you license the product patent to Tocad/Sunpak to produce this similar nearly identical product or are they copying you. If that is the case which one of you was the original so I can purchase the true flexible tripod. My Dad travels all over the world, Belize to Morocco, Berkina Faso to Sri Lanka and I want to give him the product that will stand up the best.

> ***

> I just noticed the SunPak version of the Gorillapod – by all accounts, it is identical to the one by Joby. Wouldn't this be a licensure issue? Does Joby manufacture this for SunPak?

> ***

> I was looking in my local Best Buy and saw a tripod from Sunpak that looks like your gorillapod, but in different colors. I like my gorillapod a lot, but was wondering if you make this under that brand too or what the difference is? Kind of confusing – I thought you had patents on this from your website...

> ***

> I went to Best Buy, got my receipt and then checked the tripods out......oh did I mention I was very wrong and it is a sunpak flexpod and not the Gorillapod SLR? I thought something was wrong from the day I got it as it did not feel as good as the Gorillapod Original, because it was not a Gorilla. I am now trying to see if Sunpak will help me. From here out I will make sure it says Joby on it. Best Buy [s]ells the Original Joby and the Sunpak Flexpod SLR. This bothers me as I feel misled and buying a product of lesser quality.....do not think yours would have broke like this. Thanks for your help. Now I hope Sunpak will be as nice on this.

(Burns Decl. ¶¶ 6,7,8 & 9, Exs. B, C, D & E.)

Some of the Gorillapod fans who post on the Gorillapod Love discussion group on

flickr.com have also been confused about the source of Tocad's copycat tripod, as revealed by the

following excerpts from an exchange posted on the site in early 2007:

> **cmiper says:**
> I don't really want to promote this item, (though I don't know the details) so I am posting it as a screencap rather than a link, but how does this happen? Is Gorillapod manufacturing/licensing these for Sunpak or are they knock-offs? (image omitted) Aside from the color, it's identical even down to the quick release at the head. Oh, and they even do come in the same color. (image omitted) . . .

> **S.D. says:**
> That's weird. It's not on Sunpak's web site. Bet it's licensed. . . .

> **paulbillet says:**
> It's got to be the same thing just rebranded. Sunpack is to[sic] big of an accessories company to just go around ripping off others. My guess is they think

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

they can reach a bigger market by re branding and changing the colors around. (Burns Decl. Ex. F)

Even retailers are not immune to confusion about the source of the FlexPod and FlexPod Plus. In mid-January 2008, Joby attended a trade show called Outdoor Retailer. A representative from one retailer, Sahalie, visited Joby's booth at the show. She remarked about how pleased Sahalie was to be carrying the product and how the company was hoping to carry the full line of Gorillapods. She reacted with surprise when told that her company was not carrying Joby's tripod, but was carrying the Tocad tripod instead. (Declaration of Joel Melamed ¶ 4.)

This confusion is particularly harmful to Joby because since the Tocad knockoffs look so much like the original Joby design, there is little incentive for retailers to stock both products side by side. Accordingly, Joby has had the experience that where a retailer also wishes to sell other product lines from Tocad (such as its rigid tripods), Tocad can use that leverage to force Joby's original ground breaking design out of the account. (Minn Decl. ¶ 13.)

Moreover, the longer Tocad remains in the market, the more other copyists will be encouraged by the thought that blatant copying of Joby's original design is somehow permissible.

## ARGUMENT

## I.    STANDARD FOR PRELIMINARY INJUNCTION

This Court has the authority and discretion to grant a preliminary injunction as a matter of equity. *See* Fed. R. Civ. P. 65; *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage School Dist.*, 868 F.2d 1085, 1087 (9th Cir. 1989). Joby is entitled to injunctive relief if it can demonstrate *either* (i) a combination of probable success on the merits and the possibility of irreparable injury, *or* (ii) that there exist serious questions regarding the merits and that the balance of hardships tips sharply in its favor. *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). For Joby's trade dress infringement claim, "irreparable injury may be presumed from a showing of likelihood of success on the merits." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204-05 (9th Cir. 2000).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**II.    JOBY IS LIKELY TO SUCCEED ON ITS TRADE DRESS CLAIM**

Section 43(a) of the Lanham Act protects a product's trade dress from infringement. 15 U.S.C. § 1125(a).  "Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (internal citations omitted).  To prevail on a claim for trade dress infringement, Joby must prove:  (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role; and (3) that Tocad's product creates a likelihood of consumer confusion.  *Id.* at 1258.  "[A]doption of a trade dress confusingly similar to a competitor's constitutes unfair competition that is actionable under … the Lanham Act." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989).  As the Ninth Circuit has emphasized, the dress must be considered as a whole rather than as separate distinct elements. *Clicks Billiards, Inc.*, 251 F.3d at 1259.

The central purposes of the Lanham Act's protections for product trade dress is protecting a company's good reputation for a predictable quality of goods and protecting consumers from the effects of unfair competition.  5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §2:4, 4th Ed. (2007).  Consumer learn to associate the marks of a product with the quality of that product.  *Id.*

**A.    Joby's Gorillapod Trade Dress Is Non-functional**

Trade dress protection covers design features that are not essential to the use or purpose of the article and that do not affect its cost or quality. *Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 165 (1995).  Several factors bear on whether a trade dress may be considered functional or non-functional:  "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir. 1998).  Requiring trade dress to be non-functional prevents one company from controlling a useful product feature unrelated to reputation or recognition. *Qualitex Co.*, 514 U.S. at 164.

Although the Gorillapod mechanical design certainly permits it to perform a useful

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    function (and Joby has patent applications pending on the functional aspects of its design), that

2    function does not dictate the product's look.  Joby's designer, Mr. Bevirt chose a particular

3    combination of elements – the rounded segments that comprise the legs, the rounded feet, and the

4    contrasting rings that make the legs look striped  – because they suggest a playful, creature-like

5    quality and serve to distinguish the Joby tripod from all other tripods then available to consumers.

6    (Bevirt Decl. ¶ 4.)

7        None of these design elements makes the product particularly easy or cheap to

8    manufacture.  In fact, the Gorillapod is made using custom tooling and a double-injection

9    molding process that likely make it more expensive to manufacture than other, simpler designs.

10    (Bevirt Decl. ¶ 7.)

11        The existence of alternative designs that perform the same function is persuasive evidence

12    that Joby's trade dress is non-functional.  *See STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1558

13    (N.D. Cal. 1988).  Such evidence is present here.  For example, one monopod manufacturer chose

14    a flexible material as the core of the tripod's legs and then covered the legs with material that

15    would create friction when in contact with a surface.  Others have used different-shaped feet or

16    suction cups in place of feet.  Others have chosen single color schemes, or a different pattern than

17    stripes.  (DeMarchi Decl. Ex. O.)  Examples of different camera support designs used by other

18    camera accessories manufacturers are shown below:

  

25    (DeMarchi Decl. Ex. N.)

26        Nor does the ball-and-socket construction of the Gorillapod dictate its shape.  The interior

27    of the sockets (*i.e.*, the segment that receives the ball) must conform to the shape of the ball, but

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the exterior need not be the same shape.  Ball-and-socket connectors can and do have many

different *exterior* shapes, such as cylinders or cubes, or they can have small, compressed

segments.  Some examples of ball-and-socket connectors used in other products are shown below:

  

(DeMarchi Decl. Ex. O.)

Tocad's own product offerings prove that Joby's trade dress is non-functional.  While

Tocad's first flexible tripod, the FlexPod, uses ball-and-socket construction for the tripod's legs,

the later FlexPod Plus uses a wire core construction instead.  Despite these mechanical

differences, the legs on the two versions of the Tocad product look virtually identical, and just

like the Gorillapod.

 

## B.    The Gorillapod Trade Dress Identifies Joby as Its Source

Joby is widely recognized as the source of the imaginative Gorillapod.  A trade dress

serves a source identifying role if it is either inherently distinctive or has acquired secondary

meaning.  *Clicks Billiards Inc.*, 251 F.3d at 1258.  To prove distinctiveness of its product design,

Joby must show the trade dress has acquired secondary meaning.  *See Wal-Mart Stores Inc. v.*

*Samara Bros., Inc.*, 529 U.S. 205, 212-213 (2000).

A product design acquires distinctiveness through secondary meaning when the relevant

purchasing public recognizes it as an indication of a particular source.  *Fuddruckers, Inc. v. Doc's*

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   *B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987) ("trade dress of a product or service attains

2   secondary meaning when the purchasing public associates the dress with a particular source").

3   Joby may establish secondary meaning by showing an association made by actual purchasers

4   between the tripod's appearance and its source, the length and nature of use of the design and

5   whether such use has been exclusive, and the nature and extent of its advertising. *Sharper Image*

6   *Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1073 (N.D. Cal. 2006). Evidence of actual

7   confusion and intentional copying are also highly probative of secondary meaning. 5 MCCARTHY

8   ON TRADEMARKS AND UNFAIR COMPETITION, §15:37, 4th Ed. (2007) ("Evidence of actual

9   confusion is strong evidence of secondary meaning."); *St. Ives Lab's., Inc. v. Nature's Own*

10  *Lab's.*, 529 F. Supp. 347, 349-50 (C.D. Cal. 1981) ("[d]efendant's deliberate and close copying of

11  the Plaintiff's trade dress, alone, is sufficient to establish secondary meaning in the Plaintiff's

12  trade dress") (citing *Faberge, Inc. v. Saxony Prod's, Inc.*, 605 F.2d 426, 428 (9th Cir. 1979). This

13  analysis warrants a conclusion that the Gorillapod trade dress has acquired secondary meaning.

14      Joby's efforts to distinguish its brand and the trade dress of the Gorillapod have been

15  successful because consumers associate the Gorillapod look with Joby. For example, on

16  February 13, 2008, a video was posted to the blog site www.windthefrog.net under the heading

17  "Gorilla Pod Test." The text introducing the video reads: "Picked up a Joby Gorillapod at Fry's

18  today. Pretty slick. Wrapped the legs around the passenger side door of the MINI and whipped up

19  a test." The video shows a man driving in his car while apparently talking to a video camera

20  mounted on a flexible tripod attached to his car door (neither the camera nor the tripod is shown

21  in the video). (DeMarchi Decl. Ex. Q.) Joby's Gorillapod is *not* sold at Fry's, but Tocad's

22  FlexPod and two other knock-offs of the Gorillapod are. The two other knock-offs, like Tocad's,

23  use the same trade dress Joby does. (Minn Decl. ¶ 13.) In addition, a number of customers have

24  contacted Joby with inquiries about who makes the FlexPod products and have assumed that

25  Tocad's tripods *must* be licensed by Joby. Other consumers have returned the Tocad products to

26  Joby. (Waddell Decl. ¶¶ 3, 4 and 5.) This actual confusion among consumers, and even devoted

27  fans of the Gorillapod, demonstrates just how strong the association is between the Gorillapod

28  look and Joby.

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

It is not by chance that consumers associate the Gorillapod's trade dress with Joby.  Joby invested significant resources in cultivating that association.  Joby has been using the unique Gorillapod trade dress continuously since early 2006, and this use was exclusive for most of a year.  Since early 2006 Joby has sold more than one million Gorillapods.  During that time, Joby has received extensive and favorable press coverage, and Joby, its distributors and its retailers have spent over $1 million advertising and promoting the Gorillapod design.  Two years of continuous and promotion use is more than sufficient time for a trade dress to have attained secondary meaning.  *See White Swan, Ltd. v. Clyde Robin Seed Co., Inc.*, 729 F. Supp. 1257, 1261 (N.D. Cal. 1989) (finding two years a sufficient period of time to attain secondary meaning, even in the absence of extensive advertising).

### C.    The Likelihood of Confusion Is Substantial

There can be no doubt that both retailers and consumers have been confused about the origin of the Tocad products, and that further confusion is likely.  Likelihood of confusion is "the most important element" of three-part test for trade dress infringement.  *Clicks Billiards, Inc.,* 251 F.3d at 1264-65.  This element of the test is met when "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the goods or services."  *Dreamworks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  Whether confusion is likely is determined using the eight-factor test set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  These eight factors are:  (1) the similarity of the dress; (2) the strength of the plaintiff's dress; (3) the relatedness or proximity of the goods; (4) the marketing channels used by each party; (5) the degree of care likely to be exercised by purchasers; (6) the defendant's intent in selecting the dress; (7) evidence of actual confusion, and (8) the likelihood of expansion of the parties product lines.  *Id.*

### 1.    Tocad's Knock-offs Are Nearly Identical to the Gorillapod

The similarity of the trade dress "has always been considered a critical question in the likelihood of confusion analysis."  *GoTo.com, Inc.,* 202 F.3d at 1205.  Similarities between the two products are more probative than differences.  *AMF Inc.*, 599 F.2d at 351.  Here, Tocad's

FlexPod and FlexPod Plus tripods are nearly identical to Joby's Gorillapod.  Each has rounded segments that comprise the legs, rounded feet, and contrasting rings that make the legs look striped.





**Gorillapod**                    **FlexPod**                    **FlexPod Plus**

Although the top portion of the FlexPod Plus (between the legs and the removable clip) is somewhat different, the legs and feet – which are the key features of the Gorillapod trade dress – are not significantly different.  Because the products are nearly identical in appearance, this factor supports finding a likelihood of confusion.

### 2.     The Gorillapod Trade Dress Is Strong

In determining the strength of a trade dress, a court considers the distinctiveness of the trade dress, the duration of use, the volume of products sold under the trade dress, and the amount spent on advertising and promoting the trade dress.  *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003 (2d Cir. 1997); *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, 2005 U.S. Dist. LEXIS 4581, at *30 (N.D. Cal. Mar. 23, 2005).  The stronger the trade dress, the more protection it is afforded.  *Brookfield Commc'n's, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1057 (9th Cir. 1999).

As discussed above, the Gorillapod's appearance is strongly associated with its source by the purchasing public, and it has acquired distinctiveness through secondary meaning.  The Gorillapod trade dress has become so associated with Joby and the Gorillapod brand that purchasers of Tocad's knock-off product have tried to return defective Tocad tripods to Joby on a number of occasions, believing that they were actual Gorillapods, and Joby has fielded numerous

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    inquiries from purchasers about whether it has authorized or sponsored Tocad's product.  (Burns

2    Decl. Exs. B, C, D, and E.)

3        The Gorillapod trade dress has been in use continuously for more than two years, during

4    which time Joby has sold over one million Gorillapods.  Joby, and its distributors and retailers,

5    have collectively spent more than $1 million advertising and promoting the trade dress, and the

6    product has received substantial press coverage in wide range of media outlets.

7        These considerations support a finding that Joby's Gorillapod trade dress is exceptionally

8    strong trade dress, and a finding that confusion is likely.

9            **3.    The Gorillapod, FlexPod and FlexPod Plus Compete Directly**

10        If the goods at issue are related, there is more danger that the public will assume that there

11    is an association between them and, thus, be confused.  *AMF Inc.*, 599 F.2d at 350.  Here, the

12    products are nearly identical in appearance, are sold for the same purpose, are shown at the same

13    trade shows, and are sold in many of the same retail outlets.  (Minn Decl. ¶¶ 4-11 and 13.)  The

14    fact that these products are in direct competition weighs heavily in favor of affording the

15    Gorillapod trade dress greater protection and supports a finding that confusion is likely.

16            **4.    Joby and Tocad Use the Same Marketing Channels**

17        "Convergent marketing channels increase the likelihood of confusion."  *AMF Inc.*, 599

18    F.2d at 353 (internal citations omitted).  Joby and Tocad promote their tripods at overlapping

19    trade shows and to overlapping retailers.  (Minn Decl. ¶¶ 4–11 and 13.)  The Gorillapod, the

20    FlexPod and FlexPod Plus are sold online and in many of the same retail stores.  (Minn Decl.

21    ¶¶ 8-11 and 13.)  Web searches for the term "flexible tripod" return results for both products on

22    the same web page.  (DeMarchi Decl. Ex. P.)  *See GoTo.com*, 202 F.3d at 1207 ("We now

23    reiterate that the Web, as a marketing channel, is particularly susceptible to a likelihood of

24    confusion since . . . it allows for competing marks to be encountered at the same time, on the

25    same screen.")  Such evidence, showing such substantial overlap in the companies' marketing

26    channels, is highly probative of a likelihood of confusion.

27

28

Fenwick & West LLP
Attorneys At Law
Mountain View

**5.      Consumers Are Unlikely to Discern Differences Between Joby's Gorillapod and Tocad's FlexPod Products**

The degree of care likely to be exercised by a purchaser is that of a "typical buyer exercising ordinary caution." *AMF Inc.*, 599 F.2d at 353.  What makes a buyer "typical" depends upon the circumstances in which the purchasing decision is made. *Brookfield Commc'n's, Inc.*, 174 F.3d at 1060.  When the goods at issue are less expensive, consumers are likely to exercise less care, and confusion is more likely. *Id.*  Consumers likely to purchase a Gorillapod or one of the Tocad tripods are unlikely to exercise a great deal of care because the products are not expensive.  The price point for the Gorillapod is around $25 for the smallest size and for the FlexPod around $20.  (Minn Decl. ¶ 12.)  The difference in price is slight to many consumers and the products themselves are relatively inexpensive, thus consumers are unlikely to distinguish between the products at the time of purchase, particularly when the products are purchased online or without packaging.  This factor, too, supports a finding that confusion is likely.

**6.      Tocad Intentionally Copied the Gorillapod Trade Dress**

Evidence of intentional copying of Joby's trade dress gives rise to a presumption that Tocad accomplished its goal – namely, deceiving the purchasing public into believing Tocad's product is associated with Joby's. *Clicks Billiards, Inc.*, 251 F.3d at 1266; *AMF Inc.*, 599 F.2d at 354 (internal citations omitted).  Joby is entitled to this presumption here.

Joby had been selling and promoting the Gorillapod for most of a year, and exclusively so, when Tocad introduced its first FlexPod to the market.  No other tripods looked anything like the Gorillapod.  The conclusion is inescapable that Tocad copied the Gorillapod in an effort to trade on its popularity and commercial success.

The FlexPod Plus retains this same look, even though it has an entirely different mechanical design.  Had Tocad not intended to copy the Gorillapod trade dress, it certainly could have (and would have) employed a different trade dress in its second generation product.  Tocad has also fostered deception among consumers by failing to place any distinguishing mark – such as its name or the Sunpak brand name – on its tripods.  (*See, e.g.,* Burns Decl. Ex. E (customer looked for but could not find an identifying mark on defective Tocad tripod.))

### 7.    Consumers Have Actually Been Confused by Tocad's Knock-offs

Although proof of actual consumer confusion is not necessary to show infringement, such evidence is persuasive of whether there is a likelihood of future confusion in the absence of injunctive relief. *AMF Inc.*, 599 F.2d at 352 ("Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely."). *St. Ives Lab's., Inc.*, 529 F. Supp. at 350 ("Since the test is likelihood of confusion, it is not necessary to prove actual confusion to succeed in showing infringement.") (citing *Nat'l Van Lines v. Dean*, 237 F.2d 688, 691 (9th Cir. 1956)). Actual confusion, which is often difficult to detect, has been significant and is increasing among flexible tripod customers.

As discussed, consumers have tried to return broken and defective FlexPods to Joby. Consumer emails to Joby and postings on the "Gorillapod Love" Flickr site reveal confusion about whether Tocad's products are somehow authorized by Joby (such as through a licensing relationship). (*See* Burns Decl. Exs. B, C, D, & E .) This overwhelming evidence of actual confusion supports a finding that such confusion is likely to continue if Tocad is not enjoined.

### D.    Joby Will Suffer Irreparable Harm If This Motion Is Denied

Joby is entitled to a presumption of irreparable harm based on its strong showing of a likelihood of confusion. *GoTo.com*, 202 F.3d at 1205, n.4; *Sony Computer Entm't America, Inc. v. Gamemasters*, 87 F. Supp. 2d 976, 984 (N.D. Cal. 1999) (once plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief does not issue). While this presumption can, in theory, be rebutted, the weight of the evidence in this case favors a conclusion that there is irreparable harm.

As this court very aptly observed in *STX, Inc.*, 708 F. Supp. at 1560, confusion causes injury to business reputation and loss of market share for which there is often "no meaningful, provable monetary recovery available." Here, the problems associated with confusion are compounded even more by the fact that Tocad's products are of inferior quality. (*See* Bevirt Decl. ¶ 14.) Consumers are associating this inferior product with the Joby Gorillapod, and this threatens the goodwill and reputation for excellence that Joby has earned from its sales of the Gorillapod. (*See* Burns Decl. Ex. E; Waddell Decl. ¶ 5, Ex. A; Minn Decl. ¶ 9.)

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1    Moreover, Tocad's more established network of distributors and retailers, built up over

2    the company's 20-year history, dwarfs Joby's more modest list of distributors and retailers,

3    allowing Tocad to distribute its copycat tripods quickly throughout the relevant market.  This

4    threatens Joby's sales and market share, and the effects of Tocad's inroads in the market will

5    become even greater over time.  (Minn Decl. ¶ 13.)

6    Continued sale of the FlexPod and FlexPod Plus will damage the goodwill associated with

7    the Gorillapod that Joby has built up over the last two years at considerable expense.  (Burns

8    Decl. ¶ 3, Ex. A.)  The unique Gorillapod trade dress will be diluted and Joby will lose goodwill

9    and control over its reputation.  Accordingly, the Court should conclude not only that irreparable

10    harm can be presumed, but also that irreparable injury is likely.  *Carol Cable Co., Inc. v. Grand*

11    *Auto, Inc.*, 4 USPQ. 2d 1056, 1061 (N.D. Cal. 1987) (finding irreparable injury in trade dress case

12    and granting preliminary injunction because plaintiff "risks loss of goodwill and sales, while

13    [defendant] faces only short term economic harm.")

14    **E.      The Balance of Hardships Favors Granting this Motion**

15    Even if a plaintiff does not succeed in establishing a likelihood of success on the merits, a

16    "court may … enjoin defendant's use of the … mark if plaintiff's motion raises serious questions

17    going to the merits and the balance of hardships tips sharply in plaintiff's favor."  *Sutter Home*

18    *Winery, Inc.*, 2005 U.S. Dist. LEXIS 4581, at *44.  "In evaluating the balance of hardships a court

19    must consider the impact granting or denying a motion for a preliminary injunction will have on

20    the respective enterprises."  *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (8th

21    Cir. 1993).

22    Joby will suffer harm to its reputation, goodwill, and market share if Tocad's

23    sales of copycat tripods are not enjoined.  *See Nova Wines, Inc. v. Adler Fels Winery,*

24    *LLC*, 467 F. Supp. 2d 965, 984-85 (N.D. Cal. 2006) (finding balance of hardships

25    weighed in plaintiff's favor; plaintiff may suffer "immeasurable and irreparable damages

26    to its reputation and goodwill" if competitors are allowed to infringe its trade dress);

27    *STX, Inc.*, 708 F. Supp. at 1560 (finding evidence of harm to goodwill by sales of

28    infringing but inferior products and lost sales supported balancing hardships in

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

1   plaintiff's favor).

2        Tocad need only change its trade dress, a task that is likely substantially less burdensome

3   than the mechanical design changes Tocad has already made on its own initiative for the FlexPod

4   Plus. The balance of hardships thus tips sharply in favor of grating Joby's request for relief.

5        Joby endeavored to mitigate and prevent the harm it feared from Tocad's copycat tripods

6   by trying to negotiate a resolution of the matter with Tocad. Since April of 2007, and more

7   concertedly since the fall of 2007 when Tocad released the FlexPod Plus, Joby and Tocad have

8   been engaged in negotiations to reach an agreement that would, in Joby's view, be sufficient to

9   protect Joby's interests in its unique Gorillapod trade dress. These negotiations ended on

10  March 14, 2008. (DeMarchi Decl. ¶ 14.)

11       Joby has not been able to obtain through negotiation with Tocad any protection against the

12  effects of Tocad's trade dress infringement, and so now seeks relief from this Court. *See Rain*

13  *Bird Corp. v. Hit Prod's Corp.*, 2004 U.S. Dist. LEXIS 20790, *18-19 (C.D. Cal., June 21, 2004);

14  *Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 508 (9th Cir. 1991) (granting

15  preliminary injunction following period of settlement negotiations between the parties).

16                                **CONCLUSION**

17       For the foregoing reasons, Joby respectfully requests that the Court enter a preliminary

18  injunction to bar Tocad from making any further sales of its knock-off flexible tripod products,

19  until such a time as this matter can be tried.

20

21

22  Dated: March 27 2008                    FENWICK & WEST LLP

23

24                                          By: _____

25                                               Charlene M. Morrow

26                                          Attorneys for Plaintiff
                                            JOBY, INC.

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW