June 2, 2008

Judge Susan Illston
450 Golden Gate Avenue
19th Floor, Courtroom 10
San Francisco, CA 94102

Re:  Joby, Inc. v. Tocad America Case No. 3:07-cv-6455 (SI).
     Letter Regarding Scheduling and Discovery

Dear Judge Illston:

Defendant Tocad requests the Court's assistance in resolving a dispute over the enforcement of the Stipulation agreed to by the parties and entered by the Court on May 6, 2008. Plaintiff Joby objects to Tocad's use of a letter to complain of a purported violation of the Stipulation and does not join in its submission. Tocad has invited Joby's response to Tocad's complaint, however, and Joby provides it below.

**Tocad's Position that Joby has violated the Stipulation[1]**

As the Court may recall, this matter involves Joby's claim of trade dress protection on its flexible camera tripod and Joby's claim that Tocad infringed its trade dress.[2] Tocad disputes that Joby has a protectible trade dress on the basis that all of the features claimed by Tocad as its trade dress are functional as demonstrated, in part, by Joby's pending patent applications and on the basis that Joby's product was only on the market for about 7 months before the entry by

---

[1] Below, Joby claims it is improper to submit a joint letter regarding this issue, and that Tocad misstates that this dispute regards "scheduling and discovery." On the contrary, this dispute arises out of a stipulation entered into between the parties, and approved by the Court, that precisely dealt with scheduling and discovery issues; namely, the scheduling of and discovery surrounding Joby's motion for preliminary injunction.

[2] In accordance with Local Rule 37, and despite our best efforts, the parties have been unable to informally resolve this dispute. On May 29, 2008, counsel for the parties had a fifteen minute telephonic meet and confer to discuss this issue and could not reach any agreement. In furtherance of the meet and confer, we also sent a draft to Joby's counsel of this letter setting forth Tocad's position.

Judge Susan Illston
June 2, 2008
Page 2

competitors and that is an insufficient period of time to acquire secondary meaning as required to establish a trade dress.  Nonetheless, in an attempt to resolve this matter, Tocad agreed to stop selling its existing flexible camera tripod and has redesigned its flexible tripod in a way which Tocad believes does not include the features claimed by Joby as its trade dress.  Tocad has provided Joby with drawings of the new design and Joby is well aware that regardless of whether Joby "approves" the new design, Tocad intends to proceed to market with this new product.

On May 6, 2008, the parties agreed on a Stipulation which was entered by the Court to resolve Joby's preliminary injunction motion.  The Stipulation provides, in relevant part:

>    1.  Tocad will not create, produce, distribute, ship, import, sell, advertise, market or promote its existing FlexPod line of camera support products (including those sold under other brand names) after May 30, 2008.
>
>    2.  Tocad will not create, produce, ship or import its existing FlexPod Plus line of camera support products (including those sold under other brand names) after May 30, 2008.
>
>    3.  Tocad will not distribute, sell, advertise, market or promote its existing FlexPod Plus line of camera support products (including those sold under other brand names) after July 15, 2008.

(A copy of the Stipulation is attached hereto).

Hence, by its terms, the Stipulation expressly allows Tocad to continue to sell the Flexpod products for a specific period of time.  Indeed, having the right to continue to sell the products for a period of time was Tocad's *quo* in exchange for its agreement to resolve the preliminary injunction request.  But, Joby has decided unilaterally to take away that quo in direct interference with Tocad's customers.

To wit, on May 22, 2008, Ms. DeMarchi, Joby's counsel in this litigation, sent a letter to Michael Worswick, President of Photographic Research Organization ("PRO") which sells the "Promaster Robopod" tripod, which is the Tocad Flexpod product that PRO purchases from Tocad and rebrands.  (A copy of Ms. DeMarchi's letter is attached hereto).  From prior correspondence and answers to interrogatories, Ms. DeMarchi is aware that Tocad sells the Flexpod products to PRO.  Notwithstanding the Stipulation and in Tocad's view, in express derogation of the Stipulation, Ms. DeMarchi's letter threatens legal action against PRO if it continues to sell the Flexpod/Robopod units.  The Sipulation expressly allows Tocad to continue

Judge Susan Illston
June 2, 2008
Page 3

selling its units until May 30 (Flexpod) and July 15 (Flexpod Plus).[3] Implicit, if not explicit, in the Stipulation is the ability of Tocad's customers to sell their existing inventory of the Flexpod units. Otherwise, Tocad's ability to continue to sell off its inventory would be completely meaningless, if Joby can continue to threaten the customers to whom Tocad is selling.[4]

In our meet and confer telephone conference on May 29, Joby's counsel, Ms. Morrow expressed the view that the Stipulation "was not a license" and therefore, Joby was free to contact Tocad's customers and demand that they discontinue the sales of the Flexpod or face legal action. Indeed, the letter to PRO notes that "[s]hould PRO fail to respond, Joby will avail itself of other options for protecting its intellectual property rights, including without limitation the commencement of legal action seeking damages for PRO's sales of the Promaster Robopod." Tocad submits that this conduct is contrary to the terms of the Stipulation. While Tocad acknowledges that the Stipulation is "not a license" in the sense that Joby is not receiving compensation at this time, if Joby is successful in establishing a protectible trade dress and that Tocad infringed that trade dress, Joby may be entitled to compensation in the nature of damages from Tocad – but Joby cannot pursue a double recovery for damages from both Tocad and its customers. At this point, Joby has not demonstrated the merits of its claims and, therefore has not been compensated. Tocad entered into this Stipulation in good faith to avoid the expense of a preliminary injunction hearing and with the *quid pro quo* that it could sell off its existing inventory. The Stipulation is hollow indeed if Joby can now take the position that Tocad can sell its inventory but Joby can continue to threaten legal action against the customers to whom Tocad is selling this inventory.

Tocad believes that this tactic of Joby's violates the Stipulation and requests that this Court enter an order to enforce the Stipulation and prevent Joby from threatening Tocad's customers for selling the products that the Stipulation expressly allows Tocad to sell. Tocad requests a hearing at the Court's earliest convenience to address these issues.

**Joby's Position**

Tocad has captioned this submission a "letter regarding scheduling and discovery." It has nothing to do with either. If Tocad wishes to press a claim that the stipulation has been violated, it should be required to file a motion, and Joby should be afforded an adequate opportunity to respond, before any asserted violation is considered or determined by the Court. The matter should not be raised by letter. (Civil Local Rule 7-1(a).)

---

[3] As the Court may be aware, it is not at all unusual in the settlement of a trademark or trade dress dispute for the alleged infringer to be permitted to sell off at least a portion of its existing inventory and/or "phase out" its use.

[4] Below, counsel for Joby claims that Tocad does not contend the contents of the letter to third-party PRO is misleading or inaccurate. Not so. The correspondence is misleading and inaccurate, which Tocad submits requires an immediate hearing before the Court.

Judge Susan Illston
June 2, 2008
Page 4


      This case involves ongoing violations of Joby's trade dress for its popular Gorillapod tripod.  After Joby moved for a preliminary injunction to bar further sales by Tocad of its infringing product, Tocad entered into the stipulation that is the subject of this letter.  This stipulation simply resolved Joby's motion – Tocad agreed to stop selling the FlexPod and FlexPod Plus by specific dates, and in exchange, Joby agreed to take its motion off calendar.  There has been no settlement of the case, no reimbursement of Joby for the damages that it has suffered as a result of Tocad's infringement, and certainly no release of claims against Tocad or its distributors and retailers.

      PRO, a supplier of photographic equipment and accessories, is a former customer of Joby's.  PRO originally carried Joby's Gorillapod, but began offering Tocad's cheaper knock-offs once they became available.  Joby first wrote to PRO late last year asking it to stop selling these knock-offs in violation of Joby's rights.  After Tocad agreed to stop selling its infringing products by the dates set out in the stipulation, Joby wrote again to PRO.

      Tocad does not contend that Joby's recent communication with PRO was in any way misleading or inaccurate.  Instead, it contends that the stipulation, which it only partially quotes, "expressly allows Tocad to continue to sell the Flexpod products for a specific period of time."  It obviously does not.  The stipulation resolved Joby's motion for a preliminary injunction against Tocad's continued sales of the FlexPod and FlexPod Plus.  Faced with this motion and the prospect of a court-ordered injunction, Tocad instead stipulated to *stop* its sales of the FlexPod and FlexPod Plus by specific dates.  In exchange, Joby took its motion for a preliminary injunction off calendar, as reflected in the fourth and final paragraph of the stipulation (which Tocad does not quote):  "In reliance on the foregoing, Joby stipulates that its motion for preliminary injunction no longer requires decision by the Court and may be taken off the hearing calendar."  This is the only commitment Joby made, and it is the only "quid pro quo" provided for in the stipulation.  It is apparent from reading the stipulation in its entirety that it contains no license or release to Tocad.  Nor does it contain any reference to, let alone immunize, Tocad's distributors and retailers who continue to sell Tocad's knock-offs and who are independently liable to Joby for such activity.  Joby's communications with other potential infringers, including distributors and retailers of the Tocad knock-offs, about the existence and terms of the stipulation and about Joby's other intellectual property rights are absolutely privileged.  *See, e.g., Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077-79 (N.D. Cal. 2006).  These communications in no way violate the stipulation.

      Given that Tocad has yet to provide any compensation for the damage its knock-offs have caused to Joby's business, its purported concern that Joby might seek or obtain an impermissible double recovery from Tocad's customers at some future date makes no sense.  Had there been a settlement, a monetary payment by Tocad, a release of claims for past infringement by Joby, a waiver of future claims on the remaining Gorillapod inventory, *and* a covenant not to sue

Judge Susan Illston
June 2, 2008
Page 5

Tocad's customers, then Tocad's complaints might make sense. None of this has happened, and Tocad's attempts to imply, falsely, that the stipulation was part of some settlement of this matter are, at best, disingenuous.

Very truly yours,

PERKINS COIE LLP



/s/  Debra R. Bernard
Debra R. Bernard

FENWICK & WEST LLP


/s/  Virginia K. DeMarchi
Virginia K. DeMarchi



DRB:sb