# Exhibit 6



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 3, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:  Joby, Inc. v. Tocad America, Inc.
     Case No. 07 CV 6455

Dear Kimberly:

This letter is in response to your July 1, 2008 letter received at 6:52 pm in the evening and to your July 2, 2008 email received at 4:34 pm.  Your "complaint" regarding the three week time frame in advising you of the overbreadth of your proposed search terms, is not well founded.  From the time we received your search terms on May 30 and as initially set forth in our June 5th letter, we have specifically and repeatedly indicated that we believed that some of Joby's proposed search terms were overbroad and we have reserved our rights in that regard from the beginning of these discussions—especially because Tocad sells many more products than those at issue in this case.

As you know, the collection, review and production of ESI is not something that can be done overnight and the loading and processing of the data has not been without some glitches.  Yet, we have been reviewing and producing ESI on a rolling basis as it is reviewed and processed.  However, I advised you of the large quantity of hits of certain search terms *less than 24 hours* after I was informed.  Moreover, as required by the Federal Rules, the discovery of ESI is to be a collaborative process where the parties discuss and seek to work together to agree on protocols—which is what I have tried to do despite Joby's repeated unilateral demands.  I have consistently indicated to you that we sell many products, including wholly irrelevant tripod products such that a search term that is just a customer name or organization will not be limited to the relevant flexible tripod products as it is for Joby.  Hence, in accordance with the Federal Rules, we have been attempting to negotiate with you a reasonable protocol for the scope of the case–which is a relevant consideration under the Rules.  Nonetheless we are continuing our review of data culled using the search terms and are processing and producing that data on a rolling basis.

91004-1100/LEGAL14441647.1

ANCHORAGE · BEIJING · BELLEVUE · BOISE   CHICAGO   DENVER   LOS ANGELES
MENLO PARK   OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

Kimberly Culp
July 3, 2008
Page 2

      I would be willing to share the specific details of our data quantities if Joby is willing to do the same. Your representation in prior correspondence that you collected 110 gbs of data is wholly irrelevant to the amount of data that Joby is reviewing after the application of the search terms. To date, your production has been significantly less than one half of 1gb—i.e. 322 mb—a very small portion of the data collected (0.29%). As we previously advised you, we have almost 8 gb of .psts alone that hit the search terms.

      Your request that I identify how many documents are non-responsive is impossible as it would require reviewing all of those documents to make that determination. I can tell you that having informally sampled the data, as expected, there are a lot of irrelevant hits. I would suggest that for those terms that I have identified (which only constitute 9 of the over 40 terms), we couple that term with something designed to yield responsive data such as Best Buy AND Flex*, or Best Buy AND knock* etc.. We believe that this is a reasonable approach. Please provide some suggestions for us to consider.

      Respectfully your objections to our suggested procedure for the jpeg files are meritless nor do we think conferring with the custodians is an appropriate way to ascertain what jpeg files are responsive. As I have advised you, there is a description either in the folder field or file name field of the jpegs that is searchable. We have applied the search terms flex*, gorilla*, gpod, and g-pod and are producing all jpegs that hit on those search terms. Please advise if there are any other terms you would like us to use that are likely to capture relevant responsive data. My informal sampling of the jpeg images as whole reflects that the jpeg files include many non-responsive products and images— including personal photographs.

      We were extremely disappointed to learn from your email yesterday that you have wholly misinterpreted our position in the June 25 letter. As indicated herein, we are continuing our review but we are trying to narrow the reviewable data to a more reasonable and manageable dataset. Contrary to the statements in your email, we are not and have not been "unwilling to search for documents using your search terms" nor have we "decided" not to review relevant and responsive data. In fact, our review is continuing and proceeding as noted by the rolling productions we have made thus far. We are simply attempting to negotiate a scope that is consistent with the nature of this case which is a process contemplated by the Federal Rules. I note that despite our request in the June 25 letter that Joby propose alternative terms, Joby has not yet done so. We also believe that in the interest of fairness and transparency, Joby should provide information regarding the quantities of data that hit the search terms and that Joby is reviewing as well.

      With respect to your disagreement about our views on the limits of damages, we are hopeful that we will find out from your settlement submission how you arrive at the millions of dollars you claim in damages and how you will meet your burdens of proof in that regard, since our total sales have been barely $1 million and our gross profits around $400,000. You have yet to provide us with a specific analysis in that regard. Moreover, with respect to the summary judgment, as I have indicated, we are continuing to review and produce responsive ESI—even while we are trying to narrow the universe to capture less non-responsive data. However, the summary judgment raises a very limited issue—whether the Gorillapod has a protectible trade dress –and this is an issue that is

Kimberly Culp
July 3, 2008
Page 3

largely based on Joby's own documents and admissions and one for which we do not believe Tocad's documents are relevant. As you know, pursuant to Rule 56(f), you will need to establish what specific discovery you need that you believe can overcome the arguments we have advanced in the summary judgment papers.

We look forward to hearing from you with some reasonable alternative terms to the nine overbroad terms we have identified and to receiving the information requested.

Very truly yours,

Debra R. Bernard (*by*)

cc: Vriginia Demarchi
 Charlene Morrow
 Michael O. Warnecke
 Jason Yurasek
 Brandy McMillion