**PERKINS COIE LLP**
MICHAEL O. WARNECKE, IL Bar No. 2942291
Email: MWarnecke@perkinscoie.com
*(Admitted Pro Hac Vice)*
DEBRA R. BERNARD, IL Bar No. 6191217
Email: DBernard@perkinscoie.com
*(Admitted Pro Hac Vice)*
BRANDY R. MCMILLION, IL Bar No. 6294679
Email: BMcMillion@perkinscoie.com
*(Admitted Pro Hac Vice)*
131 South Dearborn Street, Suite 1700
Chicago, IL 60603-5559
Telephone: 312.324.8400
Facsimile: 312.324.9400

**PERKINS COIE LLP**
JASON YURASEK (SBN 202131)
Email: JYurasek@perkinscoie.com
Four Embarcadero Center
Suite 2400
San Francisco, CA 94111-4131
Telephone: 415.344.7021
Facsimile: 415.344.7221

Attorneys for Defendant

TOCAD AMERICA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOBY, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>TOCAD AMERICA, INC.,<br><br>                Defendant. | Case No. 3:07-cv-06455-SI<br><br>**DECLARATION OF DEBRA R. BERNARD IN SUPPORT OF TOCAD'S OBJECTION AND OPPOSITION TO JOBY'S MOTION FOR ADMINISTRATIVE RELIEF REQUESTING A CONTINUANCE OF THE SUMMARY JUDGMENT HEARING** |

1    I, Debra R. Bernard, declare as follows:

2    1.    I am a partner at Perkins Coie LLP and counsel to Defendant ToCAD America,

3    Inc. ("Tocad"). I make this declaration based on my personal knowledge and if called as a

4    witness I am competent to testify to the matters set forth herein.

5    2.    On July 7, 2007, Plaintiff Joby, Inc. ("Joby") filed a Motion for Administrative

6    Relief Requesting a Continuance of the Summary Judgment Hearing pursuant to Civil Local Rule

7    7-3(a), 7-11(a) and Federal Rule of Civil Procedure 56(f). Prior to Joby's filing that day, I wrote

8    to Kimberly Culp, counsel for Joby, objecting to Joby's proposed procedure of filing its motion

9    pursuant to Rule 7-11 instead of Rule 6-3 which governs motions to change time. We also

10    offered to have a meet and confer with respect to the issues concerning the summary judgment

11    hearing date. In an exchange of various correspondence, Joby disagreed that its procedure was

12    improper, ignored our requests for a meet and confer and filed its Motion. Attached hereto as

13    Exhibit A are true and correct copies of the correspondence between counsel for both parties.

14    3.    In Joby's Motion for Administrative Relief, Joby incorrectly claims that there are

15    certain categories of documents which Tocad has refused to produce and that this provides a basis

16    for its motion to continue the summary judgment hearing. (*See* Dkt. 81 - Declaration of Kimberly

17    I. Culp In Support of Plaintiff Joby Inc.'s Motion for Administrative Relief Requesting a

18    Continuance of the Summary Judgment Hearing ("Culp Decl.") ¶4). This is simply not true. For

19    example, Joby claims Tocad has not produced documents relating to functionality. However,

20    Tocad has previously produced documents on the redesign efforts for the Flexpod Plus.

21    Examples of these documents include TOCE 2352-2457, 2507-2537, and 2731, previously

22    provided to Joby. Additionally, since the filing of Joby's Motion, Tocad has reconsidered its

23    position on this matter as it relates to the Flexpod 3 (even though it is not a product at issue) and

24    has produced Bates numbered versions of some of the requested documents. Significantly, these

25    documents had previously been provided to Joby pursuant to Rule 408 in accordance with

26    settlement discussions. Despite this production, Tocad firmly believes that the requested

27    documents are not material to the issues in this case and do not provide any information that

28    would preclude summary judgment. Tocad has produced these documents to avoid any

DECLARATION OF DEBRA R. BERNARD IN SUPPORT OF TOCAD'S OBJECTION AND OPPOSITION TO
JOBY'S MOTION FOR ADMINISTRATIVE RELIEF
CASE NO. 3:07-CV-06455-SI                                                                    - 2 -

1    distraction to the merits of its position on summary judgment. These documents are labeled

2    TOC839-TOC890. Attached hereto as <u>Exhibit B</u> are true and correct copies of the July 7 and 8,

3    2008 letters from Debra Bernard to Kimberly Culp regarding transmitting these documents.

4        4.      In her Declaration, Ms. Culp also inaccurately notes that Tocad "for the first time

5    on June 25, two and a half months after the Joby requests were served, wanted to narrow the

6    scope of documents to be reviewed in response to discovery requests because it had too many

7    hits." (Culp Decl. ¶5). Again, this statement is inaccurate. Prior to May 28, 2008, Joby had been

8    unwilling to discuss any specific protocol for the collection, review and production of

9    electronically stored information ("ESI") and hence, Tocad proceeded by applying what it

10   believed to be terms designed to yield responsive, relevant information (terms such as flex*,

11   gorilla*, and Joby). Joby claimed those terms were under-inclusive and on May 30, 2008

12   proposed a total of 47 search terms. As Ms. Culp is well aware, Joby first provided its proposed

13   search terms for the review of ESI on May 30, 2008. Immediately in response, I informed Ms.

14   Culp that I thought it likely a number of those terms were overbroad (e.g., terms that were

15   customer names such as "Best Buy," since Tocad sold many products to those customers) and that

16   I would advise her when the data had been processed and the terms applied. On June 25, 2008, I

17   advised Ms. Culp that 9 of the 47 terms were overbroad and suggested that we discuss ways of

18   targeting those terms in a way that might be more likely to yield the responsive documents as

19   opposed to a significant universe of non-responsive documents. My efforts at negotiating a

20   reasonable resolution have been to no avail. Attached hereto as <u>Exhibit C</u> are true and correct

21   copies of correspondence relating to these issues.

22       5.      During the course of discovery, Joby has refused to produce certain categories of

23   documents which Tocad believes relate directly to the functionality of its alleged trade dress. On

24   April 9, 2008, Tocad served Joby with its First Set of Requests for the Production of Documents

25   and Things. In Request Nos. 20 and 23-26, Tocad specifically asked for documents related to the

26   pending patent applications filed by Joby on its Mounting Apparatus Using Ball and Socket Joints

27   With Gripping Features (U.S. Patent Application Nos. 2007154254 and 2007212163). Joby has

28   continually refused to produce these documents. Attached hereto as <u>Exhibit D</u> (and also found in
     DECLARATION OF DEBRA R. BERNARD IN SUPPORT OF TOCAD'S OBJECTION AND OPPOSITION TO
     JOBY'S MOTION FOR ADMINISTRATIVE RELIEF
     CASE NO. 3:07-CV-06455-SI                                                           - 3 -

1    Exhibit C) are true and correct copies of the correspondence addressing the request for patent

2    related documents.

3        6.    Further, in Joby's Motion for Administrative Relief, it implies that Tocad is not

4    committed to conducting adequate and thorough discovery. (*See* Dkt. 81 - Culp Decl. ¶5). On

5    July 7, 2008, prior to Joby's filing of its Motion, I wrote to Kimberly Culp explaining to Joby that

6    this is a misrepresentation of its position and instructing that any such representation to the Court

7    would be blatantly incorrect. Despite Tocad's communication with Joby, Ms. Culp has expressed

8    this misrepresentation to the Court. Not until after filing its Motion did Joby acknowledge the

9    misunderstanding in a letter on July 8, 2008 (which is included in Exhibit D). Indeed, as reflected

10   in the attached correspondence, Joby's comment that Tocad "reneged" on what it agreed to

11   provide is untrue. See correspondence ttached hereto as Exhibit E (and also found in Exhibit C).

12       7.    Additionally, in Joby's Motion for Administrative Relief, Joby requests additional

13   time to conduct discovery to obtain information related to secondary meaning, including channel

14   overlap, evidence of confusion, and copying. Tocad does not believe that any of these documents

15   are material to the issues on summary judgment. However, even if these documents are necessary

16   to defend Tocad's Motion, Joby already has them in its possession. As a part of the expedited

17   discovery which the parties agreed to for purposes of Joby's Motion for Preliminary Injunction,

18   Tocad produced documents from its "info@tocad.com" mailbox which would have included any

19   information on customer confusion (correspondence included in Exhibit C). Further, Tocad has

20   also produced its customer list which would evidence its distribution and marketing channels

21   (TOC 818, 820, 823). Joby is able to discern any channel overlap by comparing this information

22   to its own customer list. Moreover, Tocad has produced documents which evidence Tocad's

23   awareness of the Gorillapod in the development of the Flexpod (TOCE 2545-47, 2338).

24       8.    In support of Ms. Culp's claim that Joby needs a "technical expert" to offer opinion

25   testimony on the issue of functionality," Ms. Culp also claims that the Declaration of Mr. Bevirt

26   details the "aesthetic, non-functional choices in deciding the look of the Groillapod." (Culp Decl.

27   ¶7). In his Declaration, the following is the entire substance of Mr. Bevirt's claim in this regard:

28

1
2
3
4
5
6
7

"Joby wanted the tripod's look and its name to suggest nimble, creature-like qualities. We chose an animal name – "Gorillapod" – for the product, and I designed its exterior to make it look like a little animal. The Gorillapod has a body section and three legs made of rounded segments (or "balls") connected together. Each of the segments in the legs has a ring around the middle in a color that contrasts with the color of the segment, and each segment ends in a rounded "foot." The rounded body, the rounded leg segments, the rounded feet, the proportions we selected for the body, legs and feet, and the contrasting rings give the tripod a playful, striped look. The contrasting colors on the feet and the rings also serve to highlight the tripod's movements."

8

(Dkt. 16, 05/27/2008 at ¶ 4)

9
10

All of these features, except for the color are functional as admitted by Joby in its patent applications and advertising. No expert testimony is required on this issue.

11
12

Date:   July 10, 2008

By: _Debra R. Bernard_
    Debra R. Bernard
    Perkins Coie LLP

13
14

Attorneys for Defendant
TOCAD AMERICA, INC.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

## McMillion, Brandy R. (Perkins Coie)

| | |
|---|---|
| **From:** | Bernard, Debra R. (Perkins Coie) |
| **Sent:** | Monday, July 07, 2008 6:47 PM |
| **To:** | 'Charlene Morrow'; Kimberly Culp |
| **Cc:** | Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Virginia DeMarchi |
| **Subject:** | RE: Joby v. Tocad |
| **Attachments:** | LIT-#1287975-v1-Stipulation_to_File_under_Seal (3) (2).DOC |

Charlene - we continue to believe that a meet and confer is necessary in connection with a motion to continue, but in order to advance the matter, we have attached a revised stipulation that is acceptable to us. We reserve our rights and objections to the motion to continue being brought pursuant to Rule 7-11 as we do not believe that is the proper procedure.


*Debra*

**Debra R. Bernard | Perkins Coie** LLP

**Litigation Partner**
**Co-Chair E-Discovery Services & Strategy Group**
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559


 Please consider the environment before printing this email. Thank you.


---

**From:** Charlene Morrow [mailto:CMorrow@fenwick.com]
**Sent:** Monday, July 07, 2008 6:23 PM
**To:** Bernard, Debra R. (Perkins Coie); Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Debra: We are entitled to call our motion what we want to. When you file your next motion you can do the same. Now, please give Kim what you need to have changed in the stipulation, other than the title of our motion, so we can get this on file without further wasted effort for both our clients. . Regards, Charlene

---

**From:** Bernard, Debra R. (Perkins Coie) [mailto:dbernard@perkinscoie.com]
**Sent:** Monday, July 07, 2008 4:21 PM
**To:** Charlene Morrow; Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Of course not. The information should be filed under seal but we object to the language in the Stipulation because it references the incorrect procedure as confirmed by Kimberly.


*Debra*

**Debra R. Bernard | Perkins Coie LLP**
Litigation Partner
Co-Chair E-Discovery Services & Strategy Group
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559

 Please consider the environment before printing this email. Thank you.


---

**From:** Charlene Morrow [mailto:CMorrow@fenwick.com]
**Sent:** Monday, July 07, 2008 6:19 PM
**To:** Bernard, Debra R. (Perkins Coie); Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Debra: Do you want Kim to then file Tocad's financial information in the open court record?  Regards, Charlene

---

**From:** Bernard, Debra R. (Perkins Coie) [mailto:dbernard@perkinscoie.com]
**Sent:** Monday, July 07, 2008 4:18 PM
**To:** Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Then we do not agree to the Stipulation as you have drafted it because local Rule 7-11 is clearly not the appropriate rule for a motion to continue a summary judgment hearing and we will strenuously object to a procedure that circumvents the proper requirements.


*Debra*

**Debra R. Bernard | Perkins Coie LLP**
Litigation Partner
Co-Chair E-Discovery Services & Strategy Group
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559


7/9/2008

 **Please consider the environment before printing this email. Thank you.**

---

**From:** Kimberly Culp [mailto:KCulp@fenwick.com]
**Sent:** Monday, July 07, 2008 6:14 PM
**To:** Bernard, Debra R. (Perkins Coie)
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Yes, I am.

---

**From:** Bernard, Debra R. (Perkins Coie) [mailto:dbernard@perkinscoie.com]
**Sent:** Monday, July 07, 2008 4:14 PM
**To:** Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Are you saying that the motion to continue is pursuant to local rule 7-11?

*Debra*

**Debra R. Bernard | Perkins Coie LLP**
Litigation Partner
Co-Chair E-Discovery Services & Strategy Group
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559

 **Please consider the environment before printing this email. Thank you.**

---

**From:** Kimberly Culp [mailto:KCulp@fenwick.com]
**Sent:** Monday, July 07, 2008 6:13 PM
**To:** Bernard, Debra R. (Perkins Coie)
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Debra,

Thank you for letting us know that you do not have a problem with us filing the references to your highly confidential information under seal. One point of clarification though, we do not believe that the motion to move the hearing date from August 22 to a later date is one that is properly brought under Rule 6-3. Therefore, we do not think the change to the stipulation which modifies our description of our motion is appropriate. Please let me

know if you will agree to us filing the stipulation as I originally sent it to you.

Thank you,
Kimberly

---

**From:** Bernard, Debra R. (Perkins Coie) [mailto:dbernard@perkinscoie.com]
**Sent:** Monday, July 07, 2008 3:51 PM
**To:** Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Kimberly, perhaps there is some confusion.  We have no problem to filing under seal references to the identified documents and we agree that such a stipulation is pursuant to 7-11.  Our objection is to characterizing the Motion for Continuance as one for Administrative Relief under 7-11.  I assume you will be filing the motion to continue in accordance with the appropriate rule, which is obviously not 7-11.  I have revised the Stipulation as per the attached to clarify that.  If my understanding is incorrect please advise.  As I indicated, we are available for a telephonic meet and confer with respect to the motion to continue at a mutually acceptable time.



*Debra*

**Debra R. Bernard | Perkins Coie LLP**
Litigation Partner
Co-Chair E-Discovery Services & Strategy Group
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559

Please consider the environment before printing this email. Thank you.

---

**From:** Kimberly Culp [mailto:KCulp@fenwick.com]
**Sent:** Monday, July 07, 2008 5:28 PM
**To:** Bernard, Debra R. (Perkins Coie)
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Debra,

We aren't filing any of Tocad's documents, but we are referencing data that comes from them.  Specifically, we're referencing data from TOC820-826 and 838, all of which were designated as highly confidential.  Please let me know if you will stipulate to filing the declaration under seal.  If not, we'll request an order ex parte.

We also disagree that our motion is governed by Local Rule 6-3.

Kimberly

**From:** Bernard, Debra R. (Perkins Coie) [mailto:dbernard@perkinscoie.com]
**Sent:** Monday, July 07, 2008 2:59 PM
**To:** Kimberly Culp
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** RE: Joby v. Tocad

Kimberly: As required by Virginia when we requested a stipulation with respect to filing under seal, please identify the specific documents that you are referring to.

Also, a motion for continuance of a hearing date on summary judgment pursuant to Rule 56(f) motion is not properly a "motion for administrative relief" pursuant to local rule 7-11 as indicated in your draft Stipulation. As you are undoubtedly aware, motions for administrative relief are only for motions "not otherwise governed by Federal or local rule or standing order of the assigned judge." Clearly, a motion to continue a hearing date in accordance with Rule 56(f) is governed by the Federal Rules. Moreover, motions to continue are also governed by local Rule 6-3, which also requires compliance with Rule 37-1. We are willing to schedule a call at a mutually available time.

*Debra*

**Debra R. Bernard | Perkins Coie** LLP
**Litigation Partner**
**Co-Chair E-Discovery Services & Strategy Group**
131 S. Dearborn St. Suite 1700
Chicago, Il 60603
dbernard@perkinscoie.com
t: 312.324.8559
f: 312.324.9559

 Please consider the environment before printing this email. Thank you.

---

**From:** Kimberly Culp [mailto:KCulp@fenwick.com]
**Sent:** Monday, July 07, 2008 4:01 PM
**To:** Bernard, Debra R. (Perkins Coie)
**Cc:** Warnecke, Michael O. (Perkins Coie); Yurasek, Jason A. (Perkins Coie); McMillion, Brandy R. (Perkins Coie); Charlene Morrow; Virginia DeMarchi
**Subject:** Joby v. Tocad

Debra,

My declaration in support of Joby's Rule 56(f) motion relies on information that Tocad has designated as highly confidential. Therefore, we would like to request Tocad's agreement that Joby may redact portions of my declaration which relate to Tocad's financial documents and file the unredacted declaration under seal. Attached is a draft stipulation to file the declaration under seal.

Please let me know if I have your consent to file the stipulation.

Thank you.

7/9/2008

Kimberly



**KIMBERLY CULP**
Fenwick & West LLP
Associate, Litigation Group
☎ (650) 335-7138
🖷 (650) 938-5200
✉ kculp@fenwick.com

---------------------------------------------

IRS Circular 230 Disclosure:  To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Fenwick & West LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.

---------------------------------------------

ATTENTION:
The information contained in this message may be legally privileged and confidential.  It is intended to be read only by the individual or entity to whom it is addressed or by their designee. If the reader of this message is not the intended recipient, you are on notice that any distribution of this message, in any form, is strictly prohibited.

If you have received this message in error, please immediately notify the sender and/or Fenwick & West LLP by telephone at (650) 988-8500 and delete or destroy any copy of this message.

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

7/9/2008

# EXHIBIT B



Perkins
Coie

131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 8, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

Re:    **Joby, Inc. v. Tocad America, Inc.**
       **Case No. 07 CV 6455**

Dear Kimberly:

      This is to advise you that we have reconsidered our position with respect to the production of documents relating to the design of the "Flexpod 3." While we do not believe that such documents are at all relevant to the issues you claim as we also believe that the best evidence is the product itself—which we have sent you, we do not want this issue to be a distraction to the merits of our position. Hence, in the interest of moving this matter along, we will produce non-privileged documents, if any, responsive to Request Nos. 12, 22 and 23 of Joby's First and Second Requests for Production of Documents relating to the "Flexpod 3." Additionally, we will agree that all documents, including correspondence, designated by both parties as confidential and for settlement purposes only pursuant to Rule 408 may be used for whatever purposes the parties desire in connection with this litigation only. However, those documents shall be designated as "Highly Confidential-Attorneys' Eyes Only." We will prepare a Bates numbered set of the Rule 408 documents and provide them to you tomorrow.

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
July 8, 2008
Page 2

Very truly yours,

Debra R. Bernard

cc: Vriginia Demarchi
    Charlene Morrow
    Michael O. Warnecke
    Jason Yurasek
    Brandy McMillion

LEGAL14453427.1



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 8, 2008

**VIA FEDERAL EXPRESS**

Kimberly I. Culp
Fenwick & West LLP
801 California Street
Mountain View, CA  94041

Re:    **Joby v Tocad, Case No. 07-cv-6455,**
       **U.S.D.C., No. Dist. of Calif.**

Dear Kimberly:

Enclosed please find TOC 00839 – TOC 00890, which are some of the documents relating to the design of "FlexPod 3," as referenced in my letter earlier today.  I have received your letter today which addresses your views of the use of the Rule 408 documents.  While I will be addressing the issues raised there separately, please note that Joby cannot have it both ways— require the production of documents with respect to a product we do not believe is relevant to this case and then object to the use of documents which reflect Joby's opinion of that product design.  We are producing these documents and can dispute at a later date the relevance and admissibility.

Very truly yours,

Debra R. Bernard

Enclosures

cc:    Virginia K. DeMarchi
       Charlene M. Morrow
       Michael O. Warnecke
       Jason A. Yurasek
       Brandy R. McMillion

64091-0006/LEGAL14455831.1

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES · MENLO PARK
OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · SHANGHAI · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

# **EXHIBIT C**

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

May 30, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

## VIA ELECTRONIC AND U. S. MAIL

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:   *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

I write to follow-up on our telephone conference of May 28, 2008 regarding discovery of electronic documents and other documents.

### 1.    Agreed Procedures

We agreed to search for electronic documents collected from a list of relevant custodians and sources. We agreed to exchange lists of the custodians who are likely to have responsive documents. Joby provides a list of its relevant custodians below.

We also agreed to exchange lists of search terms to be applied to electronic data that each party collects from its custodians. Joby will run Tocad's list against Joby's data and Tocad will apply Joby's list to Tocad's data. We will meet and confer as necessary to refine the list of terms, for example, to narrow the list of terms if it becomes apparent that any term results in an excessive number of non-responsive documents. Each party will review documents which are "hit" by these terms for responsiveness and privilege before producing data unless other arrangements are made by agreement. Joby and Tocad each reserve the right to supplement their search term lists. Joby provides its list of search terms below.

Electronic documents include e-mail as well as documents stored on local, shared or networked computers. As regards e-mail, both parties will perform searches using technology that enables searching of e-mail attachments. For example, if Tocad searches e-mail using the search functionality available in Microsoft Outlook, attachment content will not be included in the search, and this would be inappropriate.

Neither party is obligated to search or produce voicemail or Skype messages.

### 2.    Joby's Collection and Proposed Search Terms

Joby has collected and is prepared to search for responsive documents from the following custodians:

Debra R. Bernard, Esq.
May 30, 2008
Page 2

      Sam Raha
      Ken Minn
      Mel Burns
      Alex Waddell
      Lauren Miller
      Helga Viedeman
      Joel Melamed

     Joby has also collected e-mail data from the inbox info@joby.com, e-mail from a former employee, David Goldman, and data from a "customer service" computer. Mr. Goldman did not use a personal computer, so none will be searched.

     As we indicated, Joby intends to produce its electronic documents in their native format with a cross-reference file listing the prefix and an assigned Electronic Data number for each electronic document, along with the corresponding original file name and file path information. Paper documents will be produced as .tiff images with Concordance load files.

     Joby asks that Tocad use the following list of search terms to identify potentially responsive documents in its collection. Quote marks used in this list indicate that we are looking for the word or phrase inside the quote marks. The use of an asterisk (*) indicates that any combination of letters may be used to complete the remainder of the word. Please use whatever symbols are appropriate to achieve these objectives in Tocad's search of its data.

      Amazon
      "B&H"
      "Ball and socket"
      "Ball-and-socket"
      "ball head"
      "Best Buy"
      BBY
      Bevirt
      CES
      Circuit
      Confus*
      "Consumer Electronics Show"
      DBL
      Flex*
      FP
      FPP
      "Fry's"
      "Frys"
      Gentec
      Gorilla*
      Gorila*

Debra R. Bernard, Esq.
May 30, 2008
Page 3

       Gpod
       G-pod
       Gripper
       JoeBen
       Joby*
       Jobie
       "Knock off"
       "Knock-off"
       Melamed
       Minn
       Optex
       "Photographic Research Organization"
       "Photo Marketing Association"
       "Photo Plus Expo"
       PMA
       PPE
       "Private Label"
       PRO
       Pro-Master
       Promaster
       Quantaray
       Ritz*
       Robopod
       "Trade dress"
       Tristate
       Wolf*

**3.    Tocad's Collection of Documents**

As an initial matter, and as we noted during the call, we are concerned that Tocad's use of keyword searches to collect potentially discoverable documents from custodians creates a substantial risk that relevant documents have not been collected and will not be preserved. Moreover, the five terms Tocad used to search for documents (Gorillapod, Flexpod, Joby, flexible, and JoeBen) almost certainly did not identify all potentially relevant documents. Your approach of using search terms also would have missed relevant images, unless those terms happened to be attachments to documents that contained the key word.

You stated that Tocad used keyword searches to collect documents from custodians because Joby insisted on expedited discovery. Nothing about our agreement to provide discovery on an expedited basis required Tocad to collect documents in the first instance in this way. In fact, it appears Tocad has not yet produced *any* electronic documents (whether on an expedited basis or otherwise), but has only produced documents found in paper form, as we have only received documents in hard copy and none have been produced in .tiff format with Concordance load files (the format Tocad has indicated will be used for electronic documents).

Debra R. Bernard, Esq.
May 30, 2008
Page 4

Once you have identified the relevant custodians, we ask that you either collect documents from these custodians by forensic copy or by running scripts based on file extensions before using the search terms Joby has identified, or alternatively that you run Joby's search terms anew against the documents belonging to these custodians as they are kept in the ordinary course of business. If you choose to run scripts based on file extensions, we would like an opportunity to review and comment on the extensions Tocad chooses to collect.

If Tocad chooses to run search terms anew against the original data set, it will need to take all steps necessary to preserve that data set in its original form. To the extent that Joby identifies any additional search terms that should be run, Tocad will need to be prepared to return to that original data set and run the new search terms against that set. It would be inappropriate to run any additional search terms against a data set which itself is the product of running search terms.

As for images, please identify for us the method Tocad plans to use to collect and review images that may be relevant and responsive.

Please confirm whether or not Tocad has a "wiki" that may contain relevant data. If it does, we expect that you will also review that data.

You indicated that Tocad will produce electronic documents with Concordance load files in multi-page .tiff format, treating each "parent" document and its "child" attachments as one file. Tocad will provide Joby with all "visible metadata." Please let us know precisely what data you mean to include. Joby reserves the right to request production of additional metadata if Joby determines that the "visible metadata" is insufficient. We ask that Tocad produce its electronic data with searchable text (*i.e.* OCR).

If you would like to discuss any of these matters further, please contact me

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

KIC:mg

*1286070*



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

June 5, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:    **Joby, Inc. v. Tocad America, Inc.**
       **Case No. 07 CV 6455**

Dear Kimberly:

       This letter is in response to your letter dated May 30, 2008.  At the outset however, I must note that in our initial Rule 26(f) conference in March, 2008, Joby declined to discuss in any detail the manner in which ESI would be collected, searched or produced (except to note at the time that Joby wanted production in .tiff images with Concordance load files).  At that time, Joby did not want to identify any relevant custodians or search terms.  To date, the only emails Joby has produced include only those emails previously provided by Joby in connection with the motion for preliminary injunction and a few additional emails – all of them either sent to <u>info@joby.com</u> or responding to inquiries to info@joby.com.  Hence, other than a total of approximately 15-20 non-duplicative emails and emails which were not provided with the preliminary injunction papers, Joby has not produced any ESI.  Notably absent from your letter is any indication of the steps Joby has taken with respect to ESI in the time period prior to our discussion with Virginia and Charlene after the CMC on May 14.

       While Tocad was in the midst of reviewing approximately 3 GB of data collected for purposes of providing discovery for the preliminary injunction motion, the parties entered into a Stipulation to resolve the preliminary injunction.  As you know, we *temporarily* suspended this expedited review on the apparently mistaken belief that Joby was interested in a reasonable settlement in this matter.  At that time, we had conducted a first review of some of that data and it will be prepared for production in the ordinary course once we agree on the protocols for ESI.  Moreover, since our discussion after the CMC, Joby has now indicated its desire to discuss ESI (after our repeated requests) and we will produce ESI in accordance with whatever protocols are agreed upon between the parties.

64091-0006/LEGAL14337100.1

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
June 5, 2008
Page 2

### 1.    Agreed Procedures

Subject to reaching agreement on custodians and search terms, we agree with the process set forth in Section 1 of your letter with one caveat. You indicate that "electronic documents include e-mail as well as documents stored on local, shared or networked computers." For clarification, we intend to search documents stored on local drives of the relevant custodians. Please clarify what you mean by "shared or networked computers."

### 2.    Joby's Collection, Proposed Custodians and Search terms and Production

In addition to the people that you have identified on Joby's list of relevant custodians, we note that JoeBen Bevirt is conspicuously absent. We are concerned about this omission but will assume that it is an oversight. He should clearly be added as a relevant custodian.

Regarding search terms, without conceding that any or all of these terms you have identified are relevant, subject to discussion on Tocad's proposed terms, we will agree to apply the search terms you have requested in the manner you have identified to search for relevant and responsive data subject to the quantity caveats you note in section 1 of your letter. For several of these terms, namely some of Tocad's customers, Tocad may sell various unrelated products to those customers so the terms may be overbroad. We will likely run into the same issue with respect to terms such as "CES," "Consumer Electronics Show," "Photo Plus Expo" and the like. We will let you know once we have run the terms but I wanted to advise you of that possibility in advance.

Further, please confirm that Joby has made a forensic copy of the entire mailboxes, local drives, relevant shared drives and public drives of the custodians that you have identified as well as for JoeBen Bevirt.

With respect to your intention to produce in native format, I suggest that you reconsider this approach as there are several issues that make a native production undesirable including that it makes tracking documents for depositions and exhibits more difficult. As you know, native file format documents are not Bates numbered—what you are calling the "electronic data number" only exists in the electronic version, not when it is printed out. Hence, if you produce in native format then we must have an agreement that any party utilizing any document for any purpose (whether in a deposition, as an exhibit, or for submission to the Court), must produce a .tiff image of the document which is branded with the electronic data number so that it is clear what document is being used. In addition, we request the following in connection with Joby's native production:

- It is not clear what you mean by a "cross-reference" file—do you mean a file loadable into Concordance with the information that corresponds to each native file? If so, that's fine; if that is not what you meant, please clarify. In any event, we need load files.

Kimberly Culp
June 5, 2008
Page 3

- Extracted text and metadata from each native document so the dataset is searchable.

- A field with the name of the document custodian for each native record.

- A field that identifies what level of confidentiality applies to the native record (since it is an electronic record, there is no other way to know).

- A field which includes the MD5 hash value for each native record.

- A field which identifies what production the native record is part of—for example either the number of the production (001) or the date of production.

The metadata that we would like provided and that we agree to provide are the to:, from:, cc:, bcc: and sent dates fields for email and the creation and last modified dates for stand-alone e-files. Also, both Joby and Tocad agree that the production will include "parent" documents and "child" attachments together.

3. **Tocad's Relevant Custodians and Proposed Search Terms**

Tocad requests that Joby use the following search terms with the same procedures you outline in your letter:

| | | |
|---|---|---|
| Adorama | Function* | PRO |
| Alternative | GGI | ring |
| ball | Gorila* | Ritz |
| "Best Buy" | Gorilla* | Robopod |
| B&H | Gpod | Round* |
| broke* | g-pod | Sahalie |
| Circuit | Knock | Salamon |
| color | Krypton | Soloman |
| Competit* | Luke* | Solutions |
| Confus* | mercury | Sunpak |
| "Cord Camera" | merkury | Target |
| damage | Octopod | Targus |
| Darrow | Patent* | "trade dress" |
| Flex* | "Photographic Research | Tocad |
| Fry* | Organization" | Tree* |
| | | Utility |

The following are the custodians who we believe may have relevant and responsive data:

Nick Cheremsak
Richard Darrow

Kimberly Culp
June 5, 2008
Page 4

>Marisa Jurcevic
>John Long
>Sam Shinoda
>Sally Wall

As previously noted, we have also searched the info@tocad.com inbox.

### 3.    Tocad's Collection of Documents

I have already addressed some of the issues raised in this section of your letter and do not intend to go into detail of steps we took in connection with the previous expedited discovery. We are collecting data without regard to terms and will certainly comply with whatever process is agreed to going forward and whatever terms we agree upon will be run against the entire dataset of the agreed upon custodians.

Once we have reviewed the nature of the datasets and the file extensions, we will let you know what the relevant extensions are, give you our thoughts on the best method for searching them and provide you an opportunity to review and comment if you agree to do the same with respect to Joby's data.

Tocad does not have a "wiki." I believe you indicated that Joby also does not have a "wiki."

### 4.    Tocad Production

As you correctly note, to the extent possible Tocad will produce ESI in multi-page .tiff format with searchable text (OCR), with parent documents and child attachments together and with Concordance load files. Additionally, we will provide the metadata noted above assuming Joby agrees to do the same.

Please let us know your thoughts and when you want to schedule a call to further discuss these issues.

Very truly yours,

Debra R. Bernard

Enclosure
cc: Vriginia Demarchi
    Charlene Morrow
    Michael O. Warnecke
    Jason Yurasek
    Brandy McMillion

64091-0006/LEGAL14337100.1



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

June 5, 2008

**VIA EMAIL AND US POSTAL SERVICE**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

   **Re:** **Joby v. Tocad, Case No. 07 CV 6544**

Dear Kimberly:

  Enclosed please find document production TOC 00828 – TOC 00837, the info@tocad.com documents I said I would forward to you today.

  While these emails were stored electronically, because there were so few and because we have not yet come to agreement on the terms of the production of ESI, I had the documents printed out in hard copy for forwarding immediately, as you have requested.

Very truly yours,

Debra R. Bernard

Enclosures

cc: Michael O. Warnecke

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

June 18, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

**VIA ELECTRONIC AND U. S. MAIL**

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:   *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

This letter responds to your June 16 letter.

### 1.   Agreed Procedures

I concur that we have reached an agreement on protocol.

### 2.   Joby's Collection and Proposed Search Terms

Joby will provide the same metadata to Tocad that it has requested from Tocad.

To follow up on our production of extracted text, text will be extracted from each native file and stored in a separate .txt file format. The name of the .txt file will match the corresponding native file. Similarly, we need Tocad to provide a separate .txt file for each image. The production we received from you yesterday has the text included in one large load file. Please provide us with Tocad's production TOCE0001-2259 with separate .txt files for each image.

### 3.   Tocad's Relevant Production and Search Terms

While certain of Tocad's search terms are producing a large number of hits in Joby's collection, most of which are non-responsive, at this point we plan to review all of the documents identified by the hits.

We have collected a total of 110 gigabytes of electronic data from Joby, to which our review protocol is being applied. We informed you during our May 28 telephone call that Joby intended to produce responsive documents in native format and Tocad made no objection. The federal rules expressly contemplate production in native format by allowing electronically stored information to be produced "in a form or forms in which it is ordinarily maintained." Fed. R. Civ. P. 34. As indicated previously, the documents will be text-searchable, will contain metadata, and will be indexed to allow for document-specific identification. There is no reason to expect that this production will be more cumbersome or complicated to use or review. Indeed, as you point out, documents that will be used as exhibits can easily be converted to .tiff format, labeled and printed on an as needed basis. Given the scope of our collection of ESI data, the additional cost to Joby of converting our *entire* responsive production to .tiff format would be significant and is unwarranted.

Debra R. Bernard, Esq.
June 18, 2008
Page 2

### 4.    Tocad Collection

As you will recall, during our May 28 telephone call, I expressly objected to the use of any search terms to review image documents, including .jpgs, as images are not likely to contain terms or be text-searchable. Images in .jpg format, specifically, are definitely *not* text-searchable. Joby's collection includes 18 gigabytes of image data as to which we have conducted a manual review with the assistance from the custodian to identify any potentially relevant images. It is not unreasonable to ask Tocad to do the same with a data set less than half the size of the one we have collected.

You stated that you have run search terms against a "file index" to identify responsive images. Is this "file index" an index of the images themselves or of the file names that correspond to the images? What tool are you using to index the file? If Tocad is merely capturing the file name of an image, a keyword search will not identify all potentially relevant documents. If Tocad is also searching the contents of images (which seems unlikely, given your description), your keyword search will fail to pick up responsive images whose names do not contain search terms and whose contents are pictures only. From your description, Tocad's method of searching images clearly is not adequate to satisfy its discovery obligations.

### 5.    Tocad Production

Joby's ESI production will be substantially complete the week of June 30. We expect Tocad's production will be substantially complete by that time as well. Please advise if this will not be the case.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

1287024



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

June 25, 2008

**VIA EMAIL**

Kimberly Culp
Silicon Valley Center
801 California Street
Mountain View, CA  94041

**Re:    Joby v Tocad**

Dear Kimberly:

      This is in response to your letters dated June 18 and June 20, 2008.

      Please note that contrary to your representation in your June 18 letter that we "made no objection" in the May 28 call to Joby's native production, nothing was "agreed" in that call and as you know in our response to your May 30 letter, we expressly raised concerns over Joby's decision in that regard.  In any event, we reserve our rights to object to the native production if it ends up being problematic.

      With respect to the .jpg issue, this case simply does not justify the expense of manually reviewing over 5000 jpg images which will be of questionable relevance to the merits of the case.  The fact that Joby did so has no bearing on what may be reasonable.  Additionally, Joby and Tocad are in very different positions—Joby has 2 products and Tocad sells over 1200 different SKUs not including the Flexpod products.  Hence, a manual search of the jpg files will yield many other completely irrelevant products.  It is entirely reasonable to consider an alternative method of review.

      This brings up another issue that is becoming increasingly clear looking at the volume of data that you have indicated Joby has and the volume of data that we have collected—the search terms have resulted in almost 8 gigabytes of .psts alone.  First, I do not know the amount of data that you are actually reviewing for responsiveness on a document by document basis or how much is actually responsive but it appears that the volumes of ESI collected and to be processed in this case are simply not justified by the scope of the case, relevant information that would be uncovered through these efforts or the amount realistically at issue.  We only began discussing the ediscovery issues and protocols 3 weeks ago, agreed on search terms June 11 and have still been working out the details of review and production.  Indeed, during the course of this correspondence, we have repeatedly indicated that the protocols may have to be revisited based upon data quantity.  Indeed, it is fairly standard to try and agree on protocols taking into account volumes, the scope of the case and what may be reasonable for the particular case.  At this time, we think that we should reevaluate the scope of the efforts that we are engaged in with respect to the

LEGAL14398601.1

Kimberly Culp
June 25, 2008
Page 2

discovery of ESI both in view of the pending settlement conference and our pending summary judgment. The fact that Joby may have rushed to a full scale review before the protocols were fully resolved does not mandate that Tocad must do the same.

For example, we need to reevaluate some of the search terms which as I previously advised you I thought would be overbroad. Terms that have yielded an excessive number of results that include many other products not at issue are: PRO, Best Buy, B& H, Circuit, DBL, Gentec, PMA, Quantaray and Ritz. Please provide alternatives for these terms.

As you know, Tocad's gross profits on the Flexpod and Flexpod Plus products is only approximately $400,000 and by July 15, 2008, we will have stopped selling the existing Flexpod and Flexpod Plus products.[1] Further, we have made a counter proposal to Joby's settlement demand that we have not received a response to yet, and we have a settlement conference scheduled with Magistrate Judge Chen next month. We believe that the information most relevant for purposes of the settlement conference is the information already produced, i.e. the financial information and we will be producing some additional development documents this week. This is not a complicated case nor one that given its current posture, the parties should be expending substantial sums on with the incredibly expensive ediscovery process if it may settle or be resolved by summary judgment.

We welcome the opportunity to discuss these issues.

Very truly yours,

Debra R. Bernard

Enclosure

cc:    Michael O. Warnecke
       Jason A. Yurasek
       Brandy R. McMillion
       Virginia K. DeMarchi
       Charlene M. Morrow

---

[1]    The sales and profits figures we have given you, as we have previously advised, are for worldwide sales. We are putting together cost information –again as you know, Tocad sells many other products so it is not as simple an exercise for Tocad as it is for Joby. Moreover, frankly, the cost information is of little relevance for settlement purposes—you have our worldwide sales and gross profits—which are substantially less than Joby and the legal fees likely to be incurred in this case.

LEGAL14398601.1



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 3, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:     **Joby, Inc. v. Tocad America, Inc.**
        **Case No. 07 CV 6455**

Dear Kimberly:

        This letter is in response to your July 1, 2008 letter received at 6:52 pm in the evening and to your July 2, 2008 email received at 4:34 pm.  Your "complaint" regarding the three week time frame in advising you of the overbreadth of your proposed search terms, is not well founded.  From the time we received your search terms on May 30 and as initially set forth in our June 5th letter, we have specifically and repeatedly indicated that we believed that some of Joby's proposed search terms were overbroad and we have reserved our rights in that regard from the beginning of these discussions—especially because Tocad sells many more products than those at issue in this case.

        As you know, the collection, review and production of ESI is not something that can be done overnight and the loading and processing of the data has not been without some glitches.  Yet, we have been reviewing and producing ESI on a rolling basis as it is reviewed and processed.  However, I advised you of the large quantity of hits of certain search terms *less than 24 hours* after I was informed.  Moreover, as required by the Federal Rules, the discovery of ESI is to be a collaborative process where the parties discuss and seek to work together to agree on protocols—which is what I have tried to do despite Joby's repeated unilateral demands.  I have consistently indicated to you that we sell many products, including wholly irrelevant tripod products such that a search term that is just a customer name or organization will not be limited to the relevant flexible tripod products as it is for Joby.  Hence, in accordance with the Federal Rules, we have been attempting to negotiate with you a reasonable protocol for the scope of the case–which is a relevant consideration under the Rules.  Nonetheless we are continuing our review of data culled using the search terms and are processing and producing that data on a rolling basis.

91004-1100/LEGAL14441647.1

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
July 3, 2008
Page 2

I would be willing to share the specific details of our data quantities if Joby is willing to do the same. Your representation in prior correspondence that you collected 110 gbs of data is wholly irrelevant to the amount of data that Joby is reviewing after the application of the search terms. To date, your production has been significantly less than one half of 1 gb—i.e. 322 mb—a very small portion of the data collected (0.29%). As we previously advised you, we have almost 8 gb of .psts alone that hit the search terms.

Your request that I identify how many documents are non-responsive is impossible as it would require reviewing all of those documents to make that determination. I can tell you that having informally sampled the data, as expected, there are a lot of irrelevant hits. I would suggest that for those terms that I have identified (which only constitute 9 of the over 40 terms), we couple that term with something designed to yield responsive data such as Best Buy AND Flex*, or Best Buy AND knock* etc.. We believe that this is a reasonable approach. Please provide some suggestions for us to consider.

Respectfully your objections to our suggested procedure for the jpeg files are meritless nor do we think conferring with the custodians is an appropriate way to ascertain what jpeg files are responsive. As I have advised you, there is a description either in the folder field or file name field of the jpegs that is searchable. We have applied the search terms flex*, gorilla*, gpod, and g-pod and are producing all jpegs that hit on those search terms. Please advise if there are any other terms you would like us to use that are likely to capture relevant responsive data. My informal sampling of the jpeg images as whole reflects that the jpeg files include many non-responsive products and images— including personal photographs.

We were extremely disappointed to learn from your email yesterday that you have wholly misinterpreted our position in the June 25 letter. As indicated herein, we are continuing our review but we are trying to narrow the reviewable data to a more reasonable and manageable dataset. Contrary to the statements in your email, we are not and have not been "unwilling to search for documents using your search terms" nor have we "decided" not to review relevant and responsive data. In fact, our review is continuing and proceeding as noted by the rolling productions we have made thus far. We are simply attempting to negotiate a scope that is consistent with the nature of this case which is a process contemplated by the Federal Rules. I note that despite our request in the June 25 letter that Joby propose alternative terms, Joby has not yet done so. We also believe that in the interest of fairness and transparency, Joby should provide information regarding the quantities of data that hit the search terms and that Joby is reviewing as well.

With respect to your disagreement about our views on the limits of damages, we are hopeful that we will find out from your settlement submission how you arrive at the millions of dollars you claim in damages and how you will meet your burdens of proof in that regard, since our total sales have been barely $1 million and our gross profits around $400,000. You have yet to provide us with a specific analysis in that regard. Moreover, with respect to the summary judgment, as I have indicated, we are continuing to review and produce responsive ESI—even while we are trying to narrow the universe to capture less non-responsive data. However, the summary judgment raises a very limited issue—whether the Gorillapod has a protectible trade dress –and this is an issue that is

91004-1100/LEGAL14441647.1

Kimberly Culp
July 3, 2008
Page 3

largely based on Joby's own documents and admissions and one for which we do not believe Tocad's documents are relevant. As you know, pursuant to Rule 56(f), you will need to establish what specific discovery you need that you believe can overcome the arguments we have advanced in the summary judgment papers.

We look forward to hearing from you with some reasonable alternative terms to the nine overbroad terms we have identified and to receiving the information requested.

Very truly yours,

Debra R. Bernard

cc:  Vriginia Demarchi
    Charlene Morrow
    Michael O. Warnecke
    Jason Yurasek
    Brandy McMillion

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

July 3, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

**VIA ELECTRONIC AND U. S. MAIL**

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:   *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

I am writing in response to your letter of today's date. Joby is, and has been, trying to work with Tocad to resolve any discovery protocol issues. Until your letter of June 25, asking to "reevaluate the scope" of discovery efforts and claiming that though "Joby may have rushed to a full scale review before the protocols were fully resolved [that] does not mandate that Tocad must do the same," we had no reason to believe that those protocols had not been worked out.

*a. Search Criteria*

In your June 25 letter and in today's letter you make it clear that Tocad is trying to narrow the universe of data to review. While we agreed to work with Tocad to address concerns with any overbroad search terms, Tocad's proposals have unreasonably attempted to restrict discovery. Tocad has demanded that Joby propose alternative search terms to the nine it claims are overbroad, yet has not provided Joby with any of the information it needs to verify whether those terms are in fact overbroad, such as information about how many "hits" they would produce.

Contrary to your assertions, we have not asked you to identify how many documents are non-responsive. Rather, we asked for information about the universe being searched, the number of unique documents that are being hit by each term and an approximate percentage of non-responsive documents. Only with this information can we determine whether, as we suspect, Tocad is unreasonably refusing to review a reasonable number of documents.

*b. Review of Imaged Data*

In addition, Tocad continues to refuse to review imaged data in a manner that ensures that responsive documents are produced. This is obviously a critical problem given that the "look" of Tocad's products is at issue.

We continue to dispute the viability of using search terms on .jpg images. As we have now explained multiple times, search terms for images will necessarily miss relevant documents. Searching for documents based on the names of the file or folder structure without conferring with custodians will in no way assure that responsive images will be reviewed. Moreover,

Debra R. Bernard, Esq.
July 3, 2008
Page 2

Tocad has limited its search terms to terms which Joby explicitly objected to on May 28 as under-inclusive.

### c.  Discovery Requests

In your letter of July 2, 2008, you once again refused to produce documents in response to Request Nos. 12, 20, 22 and 23.  As I explained in my June 24 letter, the documents relating to Tocad's efforts to design-around Joby's trade dress are relevant to Tocad's claim that Joby's trade dress is nonfunctional and Joby's claim that this case is exceptional.  Tocad's outright refusal to produce these documents undermines our ability to respond to your motion for summary judgment and to address issues which are likely to arise at the settlement conference.

Your refusal to produce organizational charts similarly hampers our ability to conduct discovery in this case.  Moreover, Joby has never asked Tocad to "create" an organizational chart.  Rather, we requested that any organizational charts which exist be produced, which is in no way an overbroad request.

It seems clear from Tocad's letters that responsive data is not being reviewed and, therefore, not produced.  Therefore, so that we may resolve these issues and move forward with discovery, please provide us with the requested information about the nine search terms Tocad has taken issue with.  Also, please propose an alternative to reviewing images based solely on search terms.  Finally, please confirm that you will produce documents responsive to Request Nos. 12, 20, 22 and 23.  If we do not receive a substantive response from you, we will raise these issues with the Court next week.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

25933/00402/LIT/1287887.1



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 7, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

**Re:    Joby, Inc. v. Tocad America, Inc.**
         **Case No. 07 CV 6455**

Dear Kimberly:

        This is in response to your letter dated July 3, 2008 (received after 6 pm on the day
before the holiday weekend).  At the outset, I must note that contrary to your mischaracterization
and as we explained in our July 3 letter, we are not and have not refused to review any
documents resulting from the application of search terms—even though we continue to believe
that some of your search terms are overbroad.  Any representation or suggestion to the Court to
the contrary would be blatantly incorrect—we are continuing our review, we have been
producing ESI on a rolling basis, and we have simply attempted to negotiate some reasonable
limitations to search terms that we think are overly inclusive.

**Search Terms**

        With respect to your repeated complaint that we waited 3 weeks to advise you that we
had issues with only 9 out of 47 search terms, **both** parties had reserved their rights with respect
to the search protocols in the event that the proposed search terms yielded an excessive number
of hits.  The correspondence is clear in this regard and your July 3 letter expressly acknowledges
this fact.  To now complain about our attempts to promptly resolve this issue in good faith as
soon we found out about it, is unfair.  We do not believe that advising you that only 9 of the 47
search terms did in fact yield an excessive number of hits and our request that you consider

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
July 7, 2008
Page 2

revising those terms to focus them on the products at issue is an unreasonable request—again, especially because we sell many different products.

It is also curious that while we have repeatedly requested that you identify for us the quantity of data that Joby is reviewing, which requests have been ignored, we have advised you as early as the June 25 letter that based on the application of the search terms to the .pst files alone, we have a review universe of 8 gb. As noted, you apparently refuse to disclose the quantity of data that Joby has to review that resulted from the application of search terms to Joby's data. This makes an evaluation of the equities and reasonableness of the protocol difficult.

As we have repeatedly advised you, we sell over one thousand different SKUs of products so search terms such as "Best Buy" will yield more products than are at issue. We do not understand why requesting that Joby consider revising the terms to include only the products at issue or some other relevant term that might limit the universe to include mostly responsive data, is an "unreasonable attempt to restrict discovery" as you claim in your letter. To the contrary, it is a reasonable attempt to negotiate the proper scope. While we remain frustrated by Joby' apparent refusal to answer our questions regarding their own production, we are interested in full disclosure and transparency. Hence, we will provide you the information regarding the amount of unique document hits on the nine terms as soon as that information is available  I understand that we are having some technical problems today and I will advise you of this information as soon as I can.

While on the one hand you note that "we have not asked you to identify how many documents are non-responsive," you then note that you "asked for...an approximate percentage of non-responsive documents." Frankly, we do not understand the substantive difference. If you have a suggestion for a reasonable alternative way to ascertain the percentage of non-responsive hits that does not involve reviewing the documents themselves (which obviously defeats the purpose of narrowing the universe), please let us know and we would be happy to consider it.

**Review of Imaged Data**

With respect to the imaged data, enclosed are copies of printouts from the database indicating the file name and folder fields. These fields are fully searchable so I do not understand why our proposal, that we search those fields, is unreasonable in Joby's view. I note that for example, there are hundreds of images from "Daisy's wedding"—I reviewed a sampling of them, and they are indeed photographs from someone's wedding. Surely you do not believe such images are responsive—and their existence is fully disclosed in the file name field. It is simply not reasonable to expect us to open the hundreds of jpg files with the "Daisy's wedding" file name to confirm that it is not an image of a relevant product. Yet that is precisely what

LEGAL14449439.1

Kimberly Culp
July 7, 2008
Page 3

would be mandated by Joby's suggested protocol. As we have previously requested, if you have an alternative search method, other than manual review, please advise.

**Discovery Requests**

I again note that you have not responded to our objections to Joby's refusal to produce documents relating to the utility patents for which Joby is claiming protection for the same features of the Gorillapod which Joby asserts constitute its trade dress. Please note that we will raise your refusal to produce the patent-related documents with the Judge as part of the disputed discovery issues, if we are unable to resolve these issues after the required meet and confer. This refusal is indeed curious since Joby insists, without adequate explanation, that Tocad produce documents relating to a product that is not at issue in this case. The vague assertion that information with respect to a product that is not part of the case "is relevant to Tocad's claim that Joby's trade dress is nonfunctional [sic]"[1] is not a sufficient basis for Tocad to produce documents regarding a new product. Moreover, in our continuing efforts to try and reach a reasonable resolution of this matter, we have provided you with an actual production sample of the product–so Joby can certainly evaluate the functionality or nonfunctionality of that design.

Moreover, we fail to see how the new design is in any way relevant to a consideration of whether this case "is exceptional" as claimed in your letter. Indeed, despite our repeated requests, Joby has yet to indicate what evidence it has or why it believes that this case is "exceptional." We assume that it is more than the Joby's argument that Tocad "copied" the Gorillapod—in the absence of any issued patent, any published patent application or any other reasonable basis for a party to conclude it was otherwise protected having been on the market such a short time, there is simply "nothing inherently wrong with copying a competitor's product." *Tie Tech, Inc. v. Kinedyne Corp.,* 296 F.3d 778, 785 (9th Cir. 2002). Indeed, where the "overall design and appearance" was functional, "competitors thus had unrestrained permission to copy 'slavishly' or 'faithfully' those nonfunctional elements as copying preserves our competitive economy." *TrafFix Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29 (2001) (citations omitted). Additionally, as you know, at the time of the introduction of the Flexpod, the Gorillapod had only been available for about eight months. It is well established that, "while not impossible, it is difficult for a product to acquire secondary meaning during an 18-month period." *Braun, Inc. v. Dynamic Corp. of America,* 975 F.2d 815, 826 (Fed. Cir. 1992). Accordingly, based upon these facts, it is certainly a reasonable conclusion that the Gorillapod was not protectible—these facts would clearly not support a finding of an exceptional case.

Additionally, as you know, Joby has been kept apprised of the development of the new product and in fact, Joby has commented upon the design and some of the changes we have

---

[1]    We assume you meant to say either "Tocad's claim that Joby's trade dress is functional" or "Joby's claim that Joby's trade dress is nonfunctional."

Kimberly Culp
July 7, 2008
Page 4

made in the new design were based on Joby's comments.  So there is no surprise or any other nefarious intent about the development of this product that could conceivably lend any credence to an "exceptional" case assertion.

With respect to the issue of an organization chart, in the interest of expediency, we will provide you a copy of the organization chart as it currently exists, if any—with the caveat that many people on this chart have nothing to do with the Flexpod products.

We look forward to your response to our inquiries and suggestions.  If you plan to raise any of these issues with the Court, please provide some times for the required meet and confer.

Very truly yours,

Debra R. Bernard

cc:  Vriginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion

**FENWICK & WEST LLP**

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

July 8, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

**VIA ELECTRONIC AND U. S. MAIL**

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

       Re:    *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

I am writing in response to your letter on July 2 with respect to the subject of Joby's discovery responses, your letter of July 7, and your letter of July 8.

## I.    Joby's Discovery from Tocad

*FlexPod 3*

Thank you for your letter confirming that Tocad will produce documents responsive to Requests Nos. 12, 22, and 23. To be clear, Joby's requests do not seek the production of correspondence between the parties concerning efforts to settle this matter. Rather, the requests seek the underlying documents and information related to the design and development of the FlexPod 3.

Please note that we do <u>not</u> agree that "all documents, *including correspondence, designated by both parties* as confidential and for settlement purposes only pursuant to Rule 408 may be used for whatever purposes the parties desire in connection with this litigation only." Correspondence that Joby has designated as confidential and for settlement purposes only pursuant to Rule 408 may not be used by Tocad for whatever purpose Tocad desires in connection with the litigation. That correspondence should continue to be treated as confidential and subject to Rule 408.

*Organization Chart*

We appreciate your confirmation that Tocad will produce its current organization chart, if any exists. However, to the extent that there are prior versions of Tocad's organization chart, at least from the time that Tocad considered developing the first FlexPod through the present, we also request that those be produced.

*Search Terms*

Your June 25 letter advocated that the parties should "reevaluate" the scope of discovery, citing the settlement conference scheduled for later this month, the fact that Tocad had noticed a

Debra R. Bernard, Esq.
July 8, 2008
Page 2

motion for summary judgment, and your view of your client's limited exposure in the case.
Then, apparently referring to the fact that Joby immediately began reviewing documents using
the search terms Tocad had identified, you stated: "The fact that Joby may have rushed to a full
scale review before the protocols were fully resolved does not mandate that Tocad must do the
same." Whether you intended it or not, we interpreted this statement as your taking the position
that Tocad would not conduct further review of its documents until "protocols" were resolved.
We now understand from your letter of July 7 that Tocad is continuing to review and produce
documents in response to Joby's document requests and using Joby's search terms (including the
9 terms at-issue), and that the remaining dispute we have concerns the review of imaged
documents (addressed below).

We do not dispute that the parties agreed to cooperate regarding resolution of terms which
are determined to be "excessive." We have been trying to resolve this issue with you. However,
as I have previously pointed out, our concerns are twofold: (1) the time it took for you to let us
know that you believed there was a problem and (2) our need to know the facts which support your
claim that our terms are excessive. On the first point, while we are concerned that the time it took
Tocad to identify the issue undermines our present ability to get discovery completed on time, we
would like to resolve this issue promptly and move forward with discovery.

At this point, we are not in a position to propose different or narrower search terms to
address your complaint about an excessive number of hits for certain terms. Once you have
provided us with the information that we feel is reasonably necessary to make an assessment of
what changes are required, including the number of unique hits generated by the terms, we will
be in a position to address that issue. We understand from your letter of July 7 that you are
working to provide us with this information. We have also asked for an *approximate* percentage
of non-responsive documents hit by the terms to which you object. You seem particularly
bothered by this request. We assume your claim that the terms produce excessive, non-
responsive hits must have some factual basis. We are asking for your good faith assessment of
the volume of non-responsive documents in comparison to the total number of documents hit by
any given term. If you have some other comparator that we can use to assess the alleged
excessive volume of these search terms, please provide that to us. Additionally, if you have any
suggestions on how best to reach data responsive to Joby's document requests, other than by
combining the disputed search terms with other terms already in-use (as no new documents
would be "hit" by this combination), please let us know your suggestions.

The volume of data that Joby is reviewing in response to Tocad's search terms is
irrelevant to Tocad's review of its own documents. However, please note that your search terms
hit on approximately 20% of all of the documents that we collected. Our original collection was
110 gigabytes. While our system does not allow us to determine the number of gigabytes that
have been hit by your search terms, you can see that Joby's review is approximately twice the
size of Tocad's review.

*Review of Imaged Data*

Respectfully, I think you continue to misunderstand the protocol that Joby has proposed
with respect to imaged documents. We have not suggested that Tocad manually review *every*

Debra R. Bernard, Esq.
July 8, 2008
Page 3

imaged document. We do, however, think it is reasonable to request that you ask questions of custodians which will help locate relevant folders and then review images in those folders. We agree that Tocad should not have to review every image about "Daisy's Wedding" if the custodian of the folder has not identified this folder as a location where relevant images might be stored.

The problem we have with Tocad's proposal of relying solely on search terms can be shown by reference to the "Daisy's Wedding" attachment to your letter. The "Filename" is "image – 108.jpg." It is possible that responsive documents have similar generic file names and equally possible that the folders they reside in do not contain one of the search terms. In those instances, the relevant image will not be reviewed if Tocad relies solely on search terms. We are not opposed to your use of Joby's search terms as a tool to identify relevant documents. But, we still believe that it is reasonable to ask custodians to identify folders where they may have stored responsive documents and that those folders also be reviewed, regardless of the presence of any search term in the file name or folder name.

## II.    Tocad's Discovery from Joby

### *Tocad's First Set of Interrogatories*

#### Interrogatory Nos. 9 & 10

Your July 2 letter contends that Joby failed to provide a complete response to Tocad's Interrogatories Nos. 9 and 10. We disagree. With respect to Interrogatory No. 9, Joby's citation to Federal Rule of Civil Procedure 33(d) to identify responsive information is appropriate and complies with Tocad's definition of "identify." As reflected in the document cited pursuant to Rule 33(d), Joby provided identifying information about the individual to the extent such information was known to Joby. With respect to companies, Tocad's instructions require identification of the type of entity and the address of its principal place of business. Therefore, with respect to Interrogatory No. 10, Joby has provided Tocad with information sufficient to identify the companies listed in this response, since Joby provided the name of the business and the type and principal place of business is as equally available to Tocad as it is to Joby. To the extent that Joby becomes aware of additional information responsive to these interrogatories, Joby will supplement its responses.

### *Tocad's First Set of Requests for Production of Documents*

Joby confirms that it is not withholding responsive documents based upon its objection to the term "relating to." You also took issue with Joby's objections to Tocad's use of the term "any and all" and stated that the term requests that "Joby undertake its obligation to investigate and produce" all responsive documents. Joby intends to fully comply with its discovery obligations.

#### Requests Nos. 20, 23, 25 and 26

Initially, your letter references Request No. 24 but not Request No. 26. Based on our previous correspondence, it is my understanding that the dispute relates to the Requests Nos. 20, 23, 25, and 26. Please let me if know what the issue is, if any, with respect to Request No. 24.

Debra R. Bernard, Esq.
July 8, 2008
Page 4

As we have previously indicated, Joby does not agree that these requests are relevant to the functionality of Joby's trade dress. You already have the documents that reflect the inventions for which Joby has sought utility patent protection. We fail to see how requests which seek such documents as prior art and "any diligence by Joby" related to the reduction to practice of the invention are in any way relevant to whether Joby's Gorillapod trade dress is non-functional. Joby will not produce documents in response to Requests Nos. 20, 23, 25 and 26.

I am available for a telephone conference to discuss any of the matters addressed in this letter anytime on Wednesday, July 9. Please advise if you would like to schedule a call.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

KIC:mg

*1287980*



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 10, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:     **Joby, Inc. v. Tocad America, Inc.**
        **Case No. 07 CV 6455**

Dear Kimberly:

This is in response to your letter dated July 8, 2008.  As I have previously indicated, we are continuing to review the ESI that has hit search terms and you now recognize your misunderstanding wherein you incorrectly believed we were refusing to continue our review.  It is unfortunate that you jumped to this improper conclusion and referred to that improper conclusion in your filing to the court which was made *after* you received my letter.

**ESI Issues**

The assertion in your letter that the only remaining dispute concerns the jpeg images is also not correct.  First, rather than continue the dispute over the jpeg images, even though we believe your position to be completely unreasonable, we are manually reviewing for responsiveness all of the remaining images.

Second, we have prioritized our review of the dataset to those terms for which there is no dispute.  As you know, not every document can be reviewed at the same time so our rate of review is unaffected by our attempts to resolve the issues regarding the disputed terms.  I now have some information for you with respect to the quantity of data that hit the search terms in dispute:

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
July 10, 2008
Page 2

| SEARCH TERMS | UNIQUE HITS | ATTACHMENTS |
|---|---|---|
| Best Buy | 2601 | 3884 |
| B&H | 1175 | 2063 |
| Circuit | 1767 | 2931 |
| DBL | 1695 | 2444 |
| Gentec | 1407 | 1931 |
| PMA | 1499 | 1977 |
| PRO | 1778 | 3554 |
| Quantarary | 1559 | 2886 |
| Ritz | 1002 | 1682 |
| Best Buy + flex* | 319 | 571 |
| B&H + flex* | 13 | 17 |
| Circuit + flex* | 472 | 803 |
| DBL + flex* | 14 | 24 |
| Gentec + flex* | 149 | 242 |
| PMA + flex* | 21 | 37 |
| PRO + flex* | 265 | 534 |
| Quantarary + flex* | 28 | 76 |
| Ritz + flex* | 23 | 49 |
| Best Buy + gorilla* | 1 | 3 |
| B&H + gorilla* | 1 | 1 |
| Circuit + gorilla* | 0 | 0 |
| DBL + gorilla* | 0 | 0 |
| Gentec + gorilla* | 0 | 0 |
| PMA + gorilla* | 0 | 0 |
| PRO + gorilla* | 0 | 0 |
| Quantaray + gorilla* | 0 | 0 |
| Ritz + gorilla* | 0 | 0 |

     This constitutes a total of 14,283 unique documents (with respect to the 9 search terms) and 23,352 items if you include the attachments.  At a review rate per reviewer of approximately 350-400 documents per day, that is an expensive and lengthy undertaking with respect to just those 9 terms.  As you can see, when we apply these broad search terms in combination with relevant terms, the dataset is reduced significantly.  Please let us know if there are additional reasonable combinations you would like us to apply.  We will initially review the subset and produce the responsive documents.  We will then sample the remaining data to see what the responsiveness rate is and let you know.  This is a reasonable and well accepted approach which

Kimberly Culp
July 10, 2008
Page 3

we believe would be approved by the Court.[1]  We have also now been advised (there was an error in running the search term) that we have the same issue with "Tristar" which has 5,962 unique hits and 10,580 including attachments.[2]  As Tristar manufactures other products for Tocad, we will limit this term as well to the flex* and gorilla* combinations.  Your assertion that combining these terms with terms already in use will not result in "new" documents actually supports our initial view that terms such as flex*, gorilla* and the like were the most relevant and best terms.  Indeed, I made that very argument to you initially—that for example, any relevant "Best Buy" documents would be picked up by terms such as flex*, gorilla* etc.  You refused this suggestion insisting instead on the overbroad terms.

We look forward to hearing any further reasonable suggestions you may have during our meet and confer this afternoon.

Lastly, your comment that the volume of data that Joby is reviewing in response to Tocad's search terms "is irrelevant" is not well taken.  As you know, some of the parameters of the ediscovery process are whether what is done is proportional and whether the burden is justified by what is at issue in the case.  When you say the search terms "hit on approximately 20% of the documents we collected," how much of that data is actually being reviewed?  How much of that data are .psts or the equivalent?  Surely, you can tell me the actual number of items in your review set as I have here.  This is particularly relevant since in spite of all of your complaints regarding Tocad's production, you have produced a very small amount of ESI to date (322 mb).  Please advise when you intend to resume your production of ESI which at one point you had indicated would be "substantially complete" by the week of June 30.  We expect that you will be as transparent as we have been with respect to details of your review of ESI.

### Joby's Refusal to Identify Individuals in Response to Int. No. 10

Your objection to providing the information requested in Interrogatory No. 10 is baseless.  Surely, Joby is aware of what individuals at which customers or potential customers indicated that they were not carrying the gorillapod because of "knock off" products.  Since Joby continues to maintain that it is entitled to astronomical damages in this case based in part on lost sales, one would think Joby would be anxious to provide the factual basis for such claims which would include the names of the decision makers who refused to carry Joby's products because of Tocad and any details of those communications.

---

[1] This is particularly true since we are only raised an issue and sought a reasonable resolution with regard to 9 of the 47 proposed search terms—which terms we have always maintained were likely overbroad.
[2] The addition of the Tristar data brings our review dataset of .psts to 9.72 gb and over 50,000 items.

Kimberly Culp
July 10, 2008
Page 4


### Joby's Refusal to Produce Patent Related Documents

I believe that we have previously articulated our position on this issue and it remains puzzling to us on what basis Joby believes that the research and development documents of the Gorillapod are not relevant to the functionality of Joby's trade dress (for example: "conception" and "reduction to practice"—Request No. 20, early prototypes of the gorillapod—Request No. 23, prior art document which may be relevant to what Joby believed to be the functional invention—Request. Nos. 25-26). Indeed, with respect to the functionality argument, it is difficult to imagine a more relevant universe of documents. It appears that this is an issue that the Court will need to decide at the appropriate time if we are not able to resolve it during the meet and confer telephone conference.

I look forward to speaking with you this afternoon.


Very truly yours,

Debra R. Bernard


cc:  Virginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion


LEGAL14459532.1

# EXHIBIT D



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
· FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

May 22, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:    **Joby, Inc. v. Tocad America, Inc.**
       **Client-Matter No. 64091.0006**

Dear Kimberly:

        This letter is in response to your letter dated May 13, 2008 regarding various discovery issues. With respect to Joby's Document Requests Nos. 2 and 3, we have reviewed and produced hard copy documents located thus far and we are making it a priority to search for design and development documents related to the FlexPod and FlexPod Plus and will produce them when they are located.

        With respect to costs and profit information that Joby believes is relevant to the remedies it seeks, we strongly disagree that this is the type of case that warrants any enhanced damages, disgorgement or attorneys fees. We believe that ultimately Joby will not prevail on claims for any such damages. However, we will produce responsive documents relevant to those requests with the designation of "Attorney's Eyes Only." That notwithstanding, the production of these documents is in no way an admission that this case warrants the remedies Joby seeks.

        Additionally, Tocad has produced sales and revenue documents related to Ritz Camera/Quantaray. Any reference to "QC801" in the documents Bates labeled TOC00818-00827 corresponds with the Ritz Camera Quantaray product. Also, enclosed is a copy of TOC 00072 per your request.

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

Kimberly Culp
May 22, 2008
Page 2

With respect to documents from consumers, per my recent conversation with Virginia and Charlene at the Case Management Conference, we have checked the "info@tocad.com" mailbox and will produce documents responsive to this request, if any.

Further, in connection with the production of TIFF images and Concordance load files, as we have repeatedly stated we will produce TIFF images and load files for all ESI at the time of production. What we have produced to you to date are documents from paper files (with the exception of the financial information) and we do not intend to convert paper copies to scanned images. Also, per my recent conversation with Virginia and Charlene at the Case Management Conference, they wanted to reflect on procedures for the discovery of ESI and indicated that they would let us know by May 28, 2008 their suggestions on protocols in that regard.

Lastly, there are several issues which we would like to address regarding Joby's response to certain discovery requests. Specifically, we believe that the documents requested in Tocad's Document Requests Nos. 20-26 relating to the inventions claimed in Patent Application Nos. 2007154254 and 20070212163 are highly relevant to the issue of the functionality of the claimed trade dress elements and are not merely to the counterclaims. *Traffix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29-30, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001) ("A utility patent is strong evidence that the features claimed therein are functional.") Hence, we are clearly entitled to that information and the objections to producing any such documents are not well founded. Further, Document Request No. 19 relates to the evidence of package distinctiveness. In the Motion for Preliminary Injunction and the Supporting Declaration of JoeBen Bevirt, Joby discussed the effects of packaging on the consumer. This makes Document Request No. 19 highly relevant to the issues presented in this case. (*See* Motion pg. 6, Bevirt Decl. ¶8). Please reconsider your position with regards to these Requests and advise if you will produce responsive documents.

If you have any questions or would like to discuss any of this, please do not hesitate to contact me at your convenience.

Very truly yours,

Debra R. Bernard

Enclosure

64091-0006/LEGAL14297722.1

## FENWICK & WEST LLP

SILICON VALLEY CENTER · 801 CALIFORNIA STREET · MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

May 23, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

## VIA ELECTRONIC AND U. S. MAIL

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:    *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

This letter is in response to your letter dated May 22, 2008 wherein you describe issues that Tocad has with Joby's responses to Tocad's document requests.

With respect to Request No. 19, we disagree that documents relating to the "distinctiveness" of Joby's packaging are relevant. Joby has not alleged that Tocad infringes the trade dress of Joby's packaging. Moreover, Mr. Bevirt's declaration merely represents that Joby's packaging is clear so that consumers may see the Gorillapod contained inside, not that the packaging itself is "distinctive."

With respect to Request Nos. 20-23 and 25-26, Joby disagrees that *Traffix Devices, Inc. v. Marketing Displays, Inc.* supports Tocad's demands for documents relating to the patentability of inventions claimed in Joby's utility patent applications. *Traffix* makes the point that if a feature is claimed in a utility patent, this suggests the feature is functional. Requests 20-23 and 25-26 do not seek documents that disclose that features claimed by Joby in the utility patent applications to which you refer. Instead, they seek the discovery of documents relating to the patentability of Joby's inventions, an issue not raised by Joby's complaint. The two utility patent applications to which you refer in your letter are published. Accordingly, Tocad already has access to all of the documents that could conceivably be relevant based on *Traffix*.

With respect to Request No. 24, Joby will provide Tocad with a Gorillapod SLR and SLR Zoom. Joby has already provided Tocad with a sample of the original-size Gorillapod.

Should you have any questions, feel free to contact me.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

1285777



131 S. Dearborn Street, Suite 1700

Chicago, IL 60603-5559

PHONE: 312.324.8400

FAX: 312.324.9400

www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

May 29, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

**Re:    Joby, Inc. v. Tocad America, Inc.**
**        Case No. 07 CV 6455**

Dear Kimberly:

       This letter is in response to your letter dated May 23, 2008 regarding your responses to
Tocad's request for documents and is in accordance with Local Rule 37(a).

       First, we note that the response with respect to Request No. 24 concedes that the
Gorillapod, Gorillapod SLR and Gorillapod SLR Zoom meet all of the limitations of at least one
claim in U.S. Patent Application No. 2007154254 and/or U.S. Patent Application No.
20070212163.  This most certainly makes any information requested with respect to the pending
patent applications (beyond what is publicly available), relevant to the products at issue in this
suit.  A central focus in this case is the alleged trade dress of the Gorillapod product line. As you
note in your letter, *Traffix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 29-30, 121
S.Ct. 1255, 149 L.Ed.2d 164 (2001) makes the point that if a feature is claimed in a utility patent,
this suggests the feature in functional.  Consequently, any documents outside of the patent
applications which relate to the functionality of the Gorillapod products are highly relevant.
Requests Nos. 20, 23, 25 and 26 specifically request documents or things which may relate to the
functionality of the Gorillapod design.  Hence, pursuant to Fed. Civ. P. Rule 26(b) such
information is clearly relevant to Tocad's defenses in this matter and must be disclosed.

       Request No. 20 asks for documents relating to the conception and first reduction to
practice of the Gorillapod products.  Because the pending applications seek utility patents, the
determination of whether the claimed inventions are ready for patenting sheds light on the

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

Kimberly Culp
May 29, 2008
Page 2

functionality of the design. Whether an invention is "ready for patenting" involves several considerations including whether it was "reduced to practice" which means that the patentee has an embodiment that meets every limitation and operates for its intended purpose. *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed. Cir. 2007) (emphasis added). Further "[a]n invention works for its intended purpose when there is a demonstration of the workability or utility of the claimed invention." *Id.* (emphasis added). Therefore, any information which discusses, describes and/or analyzes the utility of the design is highly relevant to the functionality issue. Your refusal to produce such documents is meritless.

Further, Request No. 23 asks for inspection of all prototypes of any Joby flexible tripod, which would include the Gorillapod product line. Request Nos. 25 and 26 request documents relating to the prior art of the pending patent applications. The inspection of these prototypes and the prior art may provide relevant information as to the development of the claimed functional features of the Gorillapod and whether such features negate the alleged trade dress.

With respect to Request No. 24, by your response, it appears that the Gorillapod, the Gorillapod SLR and the Gorillapod SLR Zoom are the only products that Joby has made, used, offered for sale or sold which meet the limitations of the claims in the two pending Patent Applications. If there are other products which meet the limitations of the claims and which are not being produced, please specify.

Also, please supplement your response to Request No. 14 with any communications that have recently been sent and which have not been produced.

Very truly yours,

Debra R. Bernard

Enclosure

cc:  Vriginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion

64091-0006/LEGAL14318100.1

# FENWICK & WEST LLP

555 CALIFORNIA STREET, 12TH FLOOR    SAN FRANCISCO, CA 94104
TEL 415.875.2300    FAX 415.281.1350    WWW.FENWICK.COM

June 5, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

## VIA ELECTRONIC AND U. S. MAIL

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:    *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

In response to your letter of May 29, 2008, we disagree that Tocad's Requests Nos. 20, 23, 25 and 26 seek relevant and discoverable information. Those requests do not, as you represent, "specifically request documents or things which may relate to the functionality of the Gorillapod design."

You argue that Request No. 23, which asks for all prototypes of the Gorillapod, and Requests Nos. 25 and 26, which request prior art to Joby's pending patent applications, provide relevant information regarding the development of the claimed functional features. However, Tocad is not entitled to discover evidence relevant to the "development" of any functional features. If anything, the Supreme Court's holding in *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001) would only support discovery concerning whether an element of the claimed trade dress was also claimed in a utility patent. Prototypes and prior art have no bearing on what is claimed in U.S. Patent Application Nos. 11/324,994 or 11/801,234, both of which you already have.

Similarly then, Tocad's Request No. 20 does not request discoverable documents. Request No. 20 seeks documents relating to conception and reduction to practice of the claimed invention and "any diligence by Joby." Such a broad request is not directed to discovery of what is claimed in Joby's utility applications. Even if Tocad's request only sought documents showing reduction to practice, those documents would not show which elements have been claimed in a utility patent application nor would they show whether the product Joby now claims trade dress protection for has functional elements.

As you know, on May 29 Joby already produced documents responsive to Request No. 14. If during the course of our document review we find other responsive documents, we will produce them.

If you would like to discuss any of these matters further, please contact me.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp



**Perkins
Coie**

131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

June 6, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041

**Re:    Joby, Inc. v. Tocad America, Inc.**
**Case No. 07 CV 6455**

Dear Kimberly:

This letter is in response to your letter dated June 5, 2008 regarding Tocad's request for the patent related documents. We strongly disagree with your position that "Tocad is not entitled to discover evidence relevant to the 'development' of any functional features." It is Joby's burden to prove that the features claimed as its trade dress are nonfunctional. *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 U.S. 205, 214, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Hence, whether the documents relate to the pending patent application or not, documents relating to the development of the functional features of the Gorillapod are clearly relevant. It is in fact curious that Joby is resisting this production. In any event, since Joby has indicated that it will produce "non-privileged responsive documents in its possession, custody or control that reflect the design, research and development to Joby's flexible tripods" in response to Tocad's Request No. 1, for the moment we assume that this will include documents relating to the functional and nonfunctional features of the Gorillapod which may also be responsive to one or more of Requests Nos. 20, 23, 25 and 26.

With respect to Request No. 14, we continue to believe based upon what we are hearing from our customers that there have either been written or verbal communications by Joby and/or its representatives or agents regarding the Tocad Flexpod products other than the correspondence to PRO. Please confirm that neither Fenwick or Joby or anyone on Joby's behalf has had any written or verbal communications with Tocad's customers regarding the Flexpod products and/or

64091-0006/LEGAL14349235.1

Kimberly Culp
June 6, 2008
Page 2

the Stipulation.  If there have been any such communications, please identify those
communications and produce any such written communications.

Very truly yours,

Debra R. Bernard

cc:  Virginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion



131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 2, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

**Re:    Joby, Inc. v. Tocad America, Inc.**
       **Case No. 07 CV 6455**

Dear Kimberly:

     This letter is in response to your June 24, 2008 letter.  In addition to responding to your concerns, please find below issues that we have with Joby's responses to discovery.

## TOCAD'S DISCOVERY RESPONSES

*Joby's First Set of Requests for Production of Documents*

    Request No. 12

     This Request seeks documents relating to new designs beyond the Flexpod Plus which is what we have described in our various settlement discussions as the "Flexpod 3" or "Revision 3." As you know, all of the correspondence in connection with this redesign, from both Joby and Tocad, has indicated that it is "confidential," and that it is "pursuant to non-disclosure agreement and FRE 408."  Hence, in response to this request, Tocad appropriately responded that it had provided previous efforts at redesign pursuant FRE 408.  This most certainly limits the disclosure in discovery and the use of such documents.  If Joby seeks to use these documents beyond that purpose, we adamantly believe that to be a violation of FRE 408, the nondisclosure agreement and the spirit of the settlement discussions.  Given your refusal to produce Joby's patent related documents which directly deal with the functionality of the features of Joby's Gorillapod because the patent is not at issue, your position regarding Tocad's products that are

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES
MENLO PARK · OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · WASHINGTON, D.C.

Perkins Coie LLP and Affiliates

Kimberly Culp
July 2, 2008
Page 2

not at issue is telling. However, as promised, we will be providing you with a production sample
of the new product shortly.

*Joby's Second Set of Requests for Production of Documents*

Request No. 20

Joby has requested Tocad's organizational charts. Tocad reiterates that it has already
provided any information which could possibly result from these charts through other discovery
responses. Joby's claims that it is entitled to test these disclosures can be done through
depositions of those individuals provided. This request is most certainly over broad as we have
stated that Tocad makes over 1000 SKUs beyond the products at issue in this case and only a
limited subset of Tocad employees work on the Flexpod and Flexpod Plus products. To expect
Tocad to create an organizational chart with just these employees is not required and Tocad will
not undertake such an endeavor.

Request Nos. 22 and 23

Joby complains that Tocad is limiting its production to documents concerning only the
existing Flexpod and Flexpod Plus, which are the products at issue in this case excluding those
relating to the Flexpod 3—which is not at issue. Joby claims that documents concerning Flexpod
3 are relevant to the question of whether Joby's own trade dress is non-functional. Joby also
claims that documents regarding Flexpod 3 go to whether Tocad's conduct has been willful or
exceptional. We strongly disagree with your position. This litigation is about the Flexpod and
Flexpod Plus products. The Flexpod 3 will be on the market in the near future and Joby will be
free to evaluate and analyze the functionality of the features of that product from publicly
available information, not confidential settlement discussions. Further, Tocad's conduct
regarding the development of Flexpod 3 is not at issue in this case.

*Joby's First and Second Set of Interrogatories*

Joby takes issue with Tocad's response to certain interrogatories that "at least" a
specified group of individuals have knowledge of the requested information. Tocad disagrees
that these responses are incomplete as alleged in your letter. As you are aware, discovery is an
on-going process. The information that has been provided is the information that has been
obtained to date through a diligent investigation. That said, it does not mean that there is not a
possibility that additional persons may be discovered which would require supplementing the
responses to these interrogatories. Tocad expressly reserved the right to supplement its
discovery responses to discovery, as is provided and, indeed, required by the Federal Rules –
"Tocad's discovery and investigation in connection with this lawsuit is continuing. As a result,
Tocad's responses are limited to information obtained to date, and are given without prejudice to
Tocad's right to amend or to supplement its responses after considering information obtained

Kimberly Culp
July 2, 2008
Page 3

through further discovery or investigation." To date, Tocad has provided Joby with the individuals known and will supplement its responses only if it determines that there is additional information which is responsive to these requests. We trust that Joby will do the same in compliance with the Federal Rules.

## JOBY'S DISCOVERY RESPONSES

In addition to the many issues discussed in previous correspondence, Tocad also has the following concerns with Joby's responses to discovery.

*Tocad's First Set of Interrogatories*

Interrogatory Nos. 9 & 10

For Interrogatory Nos. 9 & 10, Joby provides incomplete responses. In Interrogatory No. 9, Tocad requested that Joby "identify all persons and/or merchants with whom you have communicated regarding the comparison of quality and design between Gorillapod product line and the Tocad product line. For each such person or merchant, identify the date, nature of contact and any disclosures made." In addition to numerous baseless objections, Joby identified 2 pages. We believe that this response is incomplete, does not comply with the clear definition of "identify" in definition no. 14, and should be supplemented with all responsive information known by Joby at this time. In Interrogatory No. 10, Tocad requested that Joby "identify all customers, distributors, retailers, and/or wholesalers who have declined to carry, sell, and/or distribute products in the Gorillapod product line and the causes therefore." In response Joby simply identifies some retailers who it claims "declined to carry, sell and/or distribute products in the Joby Gorillapod product line because of knock-off flexible tripods." This response wholly fails to comply with the instructions and definitions and does not provide a complete response to the information requested and should be supplemented accordingly.

*Tocad's First Set of Requests for Production of Documents*

With respect to nearly all the document requests, Joby's objections to the use of the terms "any and all" are meritless. These terms simply request that Joby undertake its obligation to investigate and produce all such documents that it finds responsive to this request.

Similarly, Joby's objections to the use of "relating to" as overbroad and unduly burdensome is ridiculous. "Relating to" is defined as "concerning, referring to, reflecting, resulting from, describing, evidencing, supporting or constituting." Therefore, please confirm that documents "relating to" the particular topic will be produced or have been produced.

Kimberly Culp
July 2, 2008
Page 4


Request Nos. 20, 23, 24, 25


As discussed in our prior correspondence, we believe that these requests concerning Joby's pending patent applications are directly relevant to the functionality of Joby's alleged trade dress and therefore again request that Joby produce any such documents requested.


Very truly yours,

Debra R. Bernard


cc:  Vriginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion

# EXHIBIT E

## FENWICK & WEST LLP

SILICON VALLEY CENTER   801 CALIFORNIA STREET   MOUNTAIN VIEW, CA 94041
TEL 650.988.8500   FAX 650.938.5200   WWW.FENWICK.COM

July 1, 2008

KIMBERLY I. CULP

EMAIL KCULP@FENWICK.COM
DIRECT DIAL (650) 335-7138

## VIA ELECTRONIC AND U. S. MAIL

Debra R. Bernard, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

Re:     *Joby, Inc. v. Tocad America, Inc.*

Dear Debra:

I am writing in response to your letter of June 25, 2008.

We are troubled by Tocad's attempts to limit the scope of discovery in this case based on Tocad's own assessment of the value of the case. Joby certainly disagrees that the damages at issue are as limited as Tocad believes they are. Moreover, Tocad has filed a motion for summary judgment and Joby's requests for documents seek evidence relevant to that motion. The positions you have taken undermine Joby's ability to respond to that motion by denying it access to documents which may bear on Joby's opposition.

Joby provided its search terms to Tocad on May 30. Only now, *three and a half weeks later*, you complain that some of these terms have produced "an excessive number of results and which include many other products not at issue." There is no excuse for your delay in raising this issue with us. In order for us to meaningfully address Tocad's claim that some of Joby's search terms yield excessive hits, we ask that Tocad indicate the number of unique documents that are being "hit" by each of the terms you claim produced excessive, non-responsive hits. In addition, please advise us of the approximate percentage of those hits that identify non-responsive documents. We expect this information to be provided immediately so that we can evaluate and address this purported problem without further delay.

We also continue to object that Tocad's proposal to use search terms to review for responsive *images* is an adequate method of review. We believe the most efficient way to review imaged documents is for Tocad to confer with the custodians of the imaged documents to ascertain where responsive documents are likely to be kept and to manually review those documents. If Tocad has conferred with custodians and 5,000 .jpg images were identified as potentially responsive, then please review them or else produce all 5,000 .jpg images. If you are unwilling to do this, please let us know what other alternative method of review you propose.

Sincerely,

FENWICK & WEST LLP

Kimberly I. Culp

1287662



**Perkins Coie**

131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559
PHONE: 312.324.8400
FAX: 312.324.9400
www.perkinscoie.com

Debra R. Bernard
PHONE: (312) 324-8559
EMAIL: DBernard@perkinscoie.com

July 3, 2008

**VIA EMAIL AND US MAIL**

Kimberly Culp
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041

Re:    **Joby, Inc. v. Tocad America, Inc.**
       **Case No. 07 CV 6455**

Dear Kimberly:

This letter is in response to your July 1, 2008 letter received at 6:52 pm in the evening and to your July 2, 2008 email received at 4:34 pm.  Your "complaint" regarding the three week time frame in advising you of the overbreadth of your proposed search terms, is not well founded.  From the time we received your search terms on May 30 and as initially set forth in our June 5th letter, we have specifically and repeatedly indicated that we believed that some of Joby's proposed search terms were overbroad and we have reserved our rights in that regard from the beginning of these discussions—especially because Tocad sells many more products than those at issue in this case.

As you know, the collection, review and production of ESI is not something that can be done overnight and the loading and processing of the data has not been without some glitches.  Yet, we have been reviewing and producing ESI on a rolling basis as it is reviewed and processed.  However, I advised you of the large quantity of hits of certain search terms *less than 24 hours* after I was informed.  Moreover, as required by the Federal Rules, the discovery of ESI is to be a collaborative process where the parties discuss and seek to work together to agree on protocols—which is what I have tried to do despite Joby's repeated unilateral demands.  I have consistently indicated to you that we sell many products, including wholly irrelevant tripod products such that a search term that is just a customer name or organization will not be limited to the relevant flexible tripod products as it is for Joby.  Hence, in accordance with the Federal Rules, we have been attempting to negotiate with you a reasonable protocol for the scope of the case—which is a relevant consideration under the Rules.  Nonetheless we are continuing our review of data culled using the search terms and are processing and producing that data on a rolling basis.

91004-1100/LEGAL14441647.1

Kimberly Culp
July 3, 2008
Page 2

I would be willing to share the specific details of our data quantities if Joby is willing to do the same. Your representation in prior correspondence that you collected 110 gbs of data is wholly irrelevant to the amount of data that Joby is reviewing after the application of the search terms. To date, your production has been significantly less than one half of 1gb—i.e. 322 mb—a very small portion of the data collected (0.29%). As we previously advised you, we have almost 8 gb of .psts alone that hit the search terms.

Your request that I identify how many documents are non-responsive is impossible as it would require reviewing all of those documents to make that determination. I can tell you that having informally sampled the data, as expected, there are a lot of irrelevant hits. I would suggest that for those terms that I have identified (which only constitute 9 of the over 40 terms), we couple that term with something designed to yield responsive data such as Best Buy AND Flex*, or Best Buy AND knock* etc.. We believe that this is a reasonable approach. Please provide some suggestions for us to consider.

Respectfully your objections to our suggested procedure for the jpeg files are meritless nor do we think conferring with the custodians is an appropriate way to ascertain what jpeg files are responsive. As I have advised you, there is a description either in the folder field or file name field of the jpegs that is searchable. We have applied the search terms flex*, gorilla*, gpod, and g-pod and are producing all jpegs that hit on those search terms. Please advise if there are any other terms you would like us to use that are likely to capture relevant responsive data. My informal sampling of the jpeg images as whole reflects that the jpeg files include many non-responsive products and images—including personal photographs.

We were extremely disappointed to learn from your email yesterday that you have wholly misinterpreted our position in the June 25 letter. As indicated herein, we are continuing our review but we are trying to narrow the reviewable data to a more reasonable and manageable dataset. Contrary to the statements in your email, we are not and have not been "unwilling to search for documents using your search terms" nor have we "decided" not to review relevant and responsive data. In fact, our review is continuing and proceeding as noted by the rolling productions we have made thus far. We are simply attempting to negotiate a scope that is consistent with the nature of this case which is a process contemplated by the Federal Rules. I note that despite our request in the June 25 letter that Joby propose alternative terms, Joby has not yet done so. We also believe that in the interest of fairness and transparency, Joby should provide information regarding the quantities of data that hit the search terms and that Joby is reviewing as well.

With respect to your disagreement about our views on the limits of damages, we are hopeful that we will find out from your settlement submission how you arrive at the millions of dollars you claim in damages and how you will meet your burdens of proof in that regard, since our total sales have been barely $1 million and our gross profits around $400,000. You have yet to provide us with a specific analysis in that regard. Moreover, with respect to the summary judgment, as I have indicated, we are continuing to review and produce responsive ESI—even while we are trying to narrow the universe to capture less non-responsive data. However, the summary judgment raises a very limited issue—whether the Gorillapod has a protectible trade dress –and this is an issue that is

Kimberly Culp
July 3, 2008
Page 3

largely based on Joby's own documents and admissions and one for which we do not believe Tocad's documents are relevant. As you know, pursuant to Rule 56(f), you will need to establish what specific discovery you need that you believe can overcome the arguments we have advanced in the summary judgment papers.

We look forward to hearing from you with some reasonable alternative terms to the nine overbroad terms we have identified and to receiving the information requested.

Very truly yours,

Debra R. Bernard

cc:  Vriginia Demarchi
     Charlene Morrow
     Michael O. Warnecke
     Jason Yurasek
     Brandy McMillion